Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

United States District Court
Eastern District of New York                          1:18-cv-06409-ARR-RLM

| | |
|---|---|
| Boubacar Sarr, individually and on behalf of all others similarly situated | |
| Plaintiffs | First Amended Complaint |
| - against - | |
| BEF Foods, Inc. | |
| Defendant | |

Plaintiffs by attorneys alleges upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1.      BEF Foods, Inc. ("defendant") manufactures, distributes, markets, labels and sells refrigerated ready-to-eat mashed potatoes under the Bob Evans brand name ("Products") in containers not limited to 6, 12, 20 24, 28 and 32 oz. packages

2.      The Products are available to consumers nationwide from brick and mortar and online stores of third-parties and/or defendant's website, stores and restaurants.

3.      The Products are available in no fewer than the following varieties:

- Original
- Garlic
- Sour Cream & Chives
- Sweet Potatoes
- Buttermilk Red Skin
- Loaded (mix of cheeses with bacon)
- Savory Romano & Herb
- Broccoli & Cheese

1

4.     The common relevant front representations include (i) vignette of mashed potatoes and characterizing flavor (i.e., pat of butter and parsley for Original vignette, small chives for Sour Cream and Chives (v) "Farm-Fresh Goodness," (vi) a picture of a traditional farm house on the slope of a hill and (vii) "Made with Real Potatoes, Milk & Butter…", (viii) "America's #1 Mashed Potatoes," (ix) No Artificial Colors or Flavors.

<u>Original, Garlic, Sour Cream & Chives, Loaded (clockwise)</u>



5.     The relevant back label statements relate to the (i) characterizing ingredients for the variety (i.e., Made with Real Milk & Butter for Original), (ii) freshness of potatoes ("Made with 100% Fresh Potatoes," "Made with Fresh Potatoes"), (iii) No Artificial Colors or Flavors.

<u>Original</u>                              <u>Sour Cream & Chives</u>                              <u>Garlic</u>

2

  

• Made with Real Milk & Butter
• Made with 100% Fresh Potatoes
• No Artificial Colors or Flavors
• Made in USA

• Made with Real Sour Cream & Chives
• Made with Fresh Potatoes
• No Artificial Colors or Flavors
• Made in USA

• Made with Real Garlic
• Made with 100% Fresh Potatoes
• No Artificial Colors or Flavors
• Made in USA

6.      The Original version is defendant's top-selling variety and is available in the greatest

number of retail and online locations.



7.      The Original version contains a golden yellow pat of melting butter – specification

as to amount.

3

8.    The back of the Products contains claims, nutrition facts and ingredient list.



9.    The ingredients include:

Potatoes, Milk, Butter [Cream, Salt], Soybean Oil, and/or Canola Oil, Contains Less than 2% of Salt, Natural Flavor, Monoglycerides, Potassium Sorbate (to Maintain Freshness), Black Pepper, Sodium Acid Pyrophosphate (to Maintain Color).

10.    Consumers reasonably expect food manufacturers to make products in a way that is familiar and appealing to them, based upon their typical experiences making foods at home and ingredient preferences and they have responded, reformulating products to match this demand.

11.    This preference towards "homemade" "real" and "fresh" foods is promoted on the Products' labels through the farm-based imagery.

12.    Food Navigator, another food industry publication, has reported that "that there's actually much more consumer focus on front-of-pack claims than on the ingredient list" when it

comes to matching consumer preferences, quoting the director of marketing for DuPont Nutrition & Health in North America.[1]

13. Natural Products Insider described what consumers expect when purchasing a product like the mashed potatoes of defendant – "[A] ready-made dish that requires simple heating takes the pressure off a busy weeknight, but for an increasing number of consumers, it also must have a *homemade character*." (emphasis added).[2] Fresh popular rising descriptive term

## I.   Real Butter Claims

14. Defendant has taken affirmative steps for consumers to mistakenly believe the Products contain only butter.

15. The Products emphasize butter through the label statements, images, and representations, including the numerous uses of "farm": "farm-fresh goodness," "Our Farm Salutes," image of farm, "Farm Fresh Ideas" (side panel).

16. Defendant's website emphasizes the dairy ingredients in the Products through the images which include a fresh stick of butter and glass of milk but no vegetable oil:[3]

Our mashed potatoes are made with real potatoes, cream, butter and sea salt, giving you delicious perfection with every meal.

---

[1] Elaine Watson, Who is driving the clean label agenda, and what does clean really mean?, Food Navigator, 9 March 2012.
[2] Cindy Hazen, Addressing Texture Challenges in Clean Label Prepared Foods, Natural Products Insider, 3 July 2018,
[3] https://www.bobevansgrocery.com/products-category/mashed-potatoes



17.    When consumers eat mashed potatoes, they are typically prepared or consumed with fats and oils, like butter *or* vegetable oils (i.e., margarine).

18.    This is because potatoes have a naturally dry texture of potatoes requires a lipid ingredient to enhance their texture, viscosity, palatability and to provide lubrication in the mouth.

19.    The representations are misleading because despite the centrality of butter to their marketing and labeling, they contain butter as a component of an ingredient designated as "butter blend," which also contains vegetable oils.

20.    Consumers prefer butter (and dairy spreads) which do not include vegetable oils because they prefer butter's:

- unique and unduplicated taste, owing to more than 120 naturally occurring flavor compounds including methyl ketones and lactones;
- ability to enhance the texture and other qualities of (mashed) potato products;
- mouthfeel, since butter melts at a normal body temperature, while margarine has a higher melting point, resulting in a greasy aftertaste on the palate.

21.    However, when purchasing and consuming defendant's Products, they do not get to make that all-important decision – choosing butter *or* vegetable oil ingredients – and instead, they get both despite believing they will only be having butter.

22.    The progenitor of today's vegetable oils was margarine, the first challenger to

butter's supremacy in human history.[4]

23.    The rivalry between these two foods is unlike any other which has existed, greater than that of any other foods which could allege to be rivals – i.e., grain vs. whole grain, natural fruit vs. fruit with artificial ingredients, organic v. non-organic (conventional).[5]

24.    This was the battle of dairy vs. "vegetables," farm vs. city, natural v. artificial, pastoral v. urban.

25.    Butter is the quintessential natural and simple food, produced by churning the cream at the top of a cow's milk until the fat solidifies.

26.    According to archaeologists, butter was discovered accidentally by nomadic herdsmen of the Neolithic-era, who attached sacks containing milk to their pack animals, which unknowingly was transformed into butter after days of jostling in the harsh steppes.

27.    Margarine, on the other hand, was invented because of the French government's efforts to develop a lower quality and cheaper butter alternative in the late 19th century.

28.    Vegetable oils are the primary ingredient in margarine, and such oils are converted from liquid to solid through hydrogenation, fractionation and interesterification, in the presence of chemical and enzymatic catalysts.

29.    From the beginning of vegetable oil-based fats' introduction to the U.S., there was coordinated opposition by the dairy lobby, resulting in The Oleomargarine Act of 1886, which

---

[4] J. Bourdieu et al., *"That elusive feature of food consumption": Historical perspectives on food quality, a review and some proposals*. Food and History, (2007) 5(2), 247-266 ("between the expensive, genuine article [butter] and its cheaper surrogate [margarine] ('artificial butter', as it was dubbed) … Margarine, an industrial good, had mimicked the 'natural', time-honored butter ever since its invention in 1869.").

[5] Margarine vs. butter: one of history's hottest rivalries?, Rivalry: TMSIDK Episode 17 – Freakonomics, Podcast, 4 June 2017, accessed 12 November 2017; J.H. Young, *"This Greasy Counterfeit'": Butter Versus Oleomargarine in the United States Congress, 1886*, Bulletin of the History of Medicine, Fall (1979), 53.3, pp. 392-414; J. Bourdieu et al., *"That elusive feature of food consumption": Historical perspectives on food quality, a review and some proposals*. Food and History, (2007) 5(2), 247-266; Distillations Science + Culture + History, Butter vs. Margarine: one of America's most bizarre food battles, Podcast, 14 November 2017.

taxed margarine and defined butter.[6]

30.    Margarine producers even fortified their product with Vitamin A to better imitate butter.

31.    Even a Supreme Court Justice Judge John Marshall Harlan offered thoughts on butter and its vegetable oil competition, stating:

> [T]he real object of coloring oleomargarine so as to make it look like genuine butter is that it may appear to be what it is not, and thus induce unwary purchasers, who do not closely scrutinize the label upon the package in which it is contained, to buy it as and for butter produced from unadulterated milk or cream from such milk.[7]

32.    To prevent this deception against consumers, many states banned the vegetable oil-based margarine because it was being dyed yellow to trick unwitting consumers.[8]

33.    Other states required margarine be dyed pink, red and brown, so that consumers would not confuse it with butter.[9]

34.    The Great Depression and World War II caused vegetable oil-based margarine consumption to increase, due to its lower cost, and the rationing and shortages of butter.

35.    In the post-war decades, margarine consumption surpassed butter, because of its low price, convenience and public health guidance which warned against saturated fats in butter.

36.    By the mid-1970s, "margarine (and emulsified vegetable oils in general—the naming is complicated, federally regulated, and often inaccurate, so let's just stick with 'margarine') was

---

[6] Geoffrey P. Miller, *Public Choice at the Dawn of the Special Interest State: The Story of Butter and Margarine*, Cal. Law Review 77 (1989) (describing the rise of the dairy lobby in response to margarine's introduction to the U.S.); W. T. Mickle, *Margarine Legislation*, American Journal of Agricultural Economics (Aug. 1941).

[7] Michael J. Pettit, *The unwary purchaser: Consumer psychology and the regulation of commerce in America*, Journal of the History of the Behavioral Sciences 43.4 (2007): 379-399.

[8] April White, *When Margarine Was Contraband*, JSTOR Daily, 24 Aug. 2017, accessed 15 October 2017; The Butter vs. Margarine Wars Sweep Vermont in 1900, New England Historical Society, accessed 10 November 2017.

[9] Rebecca Rupp, *The Butter Wars: When Margarine Was Pink*, National Geographic Blog – The Plate – Serving daily discussions on food (Aug. 13, 2014); see also Ruth Dupré, *"If It's Yellow, It Must be Butter": Margarine Regulation in North America Since 1886*, Journal of Econ. History, (1999).

on quite the roll," outpacing butter three to one.[10]

37.    Gradually, scientists reassessed the harm of saturated fat (butter) and discovered that vegetable oil margarines contained even more harmful trans fats, caused by hydrogenation.

38.    Additionally, scientific consensus shifted from holding fat content responsible for the epidemic of health-related issues as opposed to other food components, such as sugar.

39.    This reassessment of fat – the type and amount consumed in one's diet –

coincided with the country's natural food trends: guided by nutritionists' evolving consensus, consumers became suspicious of highly processed foods full of refined grains, added sugars, and, yes, vegetable oils, all of which bore little resemblance to foods found in the natural world.[11]

40.    Margarine had come to epitomize an "undesirable artificiality" due to its shelf-stability and low price.

41.    According to the NYU Professor of Nutrition Marion Nestle,

Margarine has become a marker for cheap, processed, artificial, unhealthy food. The irony is hilarious. Unilever went to a lot of trouble to formulate healthy margarines, but the zeitgeist has caught up with them.[12]

42.    Professor Nestle was referring to the decision by Unilever – the world's largest vegetable oil margarine producer – to sell its "spreads" division.

43.    Though margarine manufacturers attempted to capture consumer enthusiasm for natural and less processed foods by *adding* butter to margarine and/or blending it with vegetable oils, consumers saw through this tactic:

Adding a little butter to the company's margarine wasn't going to change that perception: If people want butter, they want butter.[13]

---

[10] TrendSource, Amidst Natural Food Trends, Margarine Becomes Marginal, Oct. 18, 2017.
[11] Amidst Natural Food Trends, Margarine Becomes Marginal, TrendSource, 18 October 2017, accessed 1 October 2018.
[12] Why the King of Margarine Wants Out, Justin Fox, Bloomberg, 6 April 2017, accessed 15 November 2017.
[13] *Id*.

44.     In place of vegetable oils and synthetically produced foods, there has been a resurgence of real foods like butter, since it lacks artificial ingredients, preservatives or synthetic substances.[14]

45.     Even commercial food industry trade publications have recognized that consumers' affinity for butter is matched by an avoidance of its overly processed and artificial competitors, with Food Ingredients First noting:

> Consumers are also increasingly looking for natural products that taste good and they want to understand the ingredient list of their foods. Butter is as natural as it gets, made of just cream, or cream and salt – so butter offers food manufacturers the ability to have a clean, understandable ingredients list on their products.[15]

46.     Food Business News echoed the pro-butter sentiment, reporting that:

> Butter is back as a growing number of consumers turn their backs to foods perceived as artificial, such as vegetable oil-based margarine. Fresh from the farm, and churned the same way for generations, butter's comeback may be attributed to its simplicity and its deliciousness.[16]

47.     One food industry executive pointed out that "Butter consumption is up 25% in the last 10 years" and that "Butter is benefiting from consumers' desire for fresh, real and natural products," while demand for margarine continues to reach new depths.[17]

48.     This can be seen by the ingredients used to make butter – cream, salt or both – whereas vegetable oil-based margarine and other artificial spreads contain a host of ingredients requiring a chemistry textbook to understand.[18]

49.     The comments of the Bonnie Liebman, Director of Nutrition at the Center for Science in the Public Interest, on consumer perceptions of these two products were apt: "Butter has a more

---

[14] *Id.*

[15] Butter: A healthy fat or fad?, Food Ingredients First, 10 April 2018, accessed 24 June 2018.

[16] Butter innovations churning retail sales, Donna Berry, Food Business News, 14 June 2016, accessed 19 September 2018.

[17] *Id.*

[18] Supra, note 7 and 8.

natural image. I think people have always been a bit suspicious about margarine."

50.     According to Mintel, the leading global market research firm, part of the reason for butter consumption now exceeding its vegetable oil rivals is because 68% of consumers recognize butter as pure, natural, simple and minimally processed.[19]

51.     More significant than any difference between butter and vegetable oils over the exact number of micronutrients or grams of certain components is the desire of plaintiffs and consumers to eschew artificial and synthetic foods in favor of natural and simpler ones – butter, made from cow's milk vis-à-vis vegetable oils, of vegetables of unknown origins.

52.     After all, vegetable oils are not produced on a farm which is where butter originates, but in an industrial factory, often far from the tranquility which accompanies the rural way of life.

II.  Reasonable Consumers do not Eat Butter and Vegetable Oil-Based Spreads Together

53.     To the extent reasonable consumers consume butter *and* vegetable oils, this would only be done in separate foods (i.e., butter for baking muffins, vegetable oil for latkes or vegetables), instead of using a bit of each within the same food.

54.     This is similar to how most people would prefer watching an entire movie (even a bad film) instead of seeing half of two highly regarded movies – variety is not always preferred.

55.     For the purposes of the present example, vegetable oils are represented through use of the term "margarine" since it simplifies the search parameters and results and it is how most consumers understand vegetable oil alternatives to butter.

56.     These preferences are borne out by looking at how consumers eat mashed potatoes, through a review of Allrecipes.com, which has more user-contributed recipes than any other site

---

[19] Mintel, *Report on Butter, Margarine and Spreads – US (Aug. 2011)*; Brenda Reau, *Butter is Gaining Ground with Consumer Demand for Natural Products*, Michigan State University Extension Product Center (Sep. 15, 2011).

11

and is the most-visited recipe site.[20]

57.   This is shown and can be replicated by visiting google.com and entering the two combinations of Search Terms 1 and 2 followed by "site:allrecipes.com/recipe," as shown below.

| Subdomain URL | Search Term 1 | Search Term 2 | Results |
|---|---|---|---|
| site:allrecipes.com/recipe | "mashed potatoes" | "butter or margarine" | 171 |
| | | "butter and margarine" | 0 |

58.   When "mashed potatoes" is combined with "butter or margarine," Allrecipes.com retrieves 171 distinct, user-generated recipes which include "mashed potatoes" in the name (i.e., Whipped Mashed Potatoes, Rosemary Mashed Potatoes, etc.).

59.   In contrast, where "mashed potatoes" is combined with "butter and margarine," Allrecipes.com is unable to locate a single entry.

60.   This illustrates that when consumers have mashed potatoes, they will seek a version which has butter or vegetable oil-based margarine, but never both.

61.   The Products are misleading because consumers do not expect to receive butter and vegetable oils in a mashed potatoes product.

III. Quality Claims – Fresh and Real

62.   Consumers' strong preferences for butter or vegetable oil alternatives have not just been highlighted by food industry executives, but by writers, researchers and scientists.[21]

63.   One commentator described her experiences in a way which would seem familiar to Americans:

---

[20] According to the Alexa.com, the premier commercial internet traffic data firm, and eBizMBA.com, which combines data from Alexa with other similar services such as Compete and Quantcase.

[21] Nina Martyris, *Operation Margarine: Tracing the Wartime Rise of Ersatz Butter*, Harper's Magazine – Blog (May 2, 2014) (describing the intensity of reactions brought about by replacing butter with margarine and noting "Margarine thrives on adversity, and its origins are rooted in it."); Libby Copeland, *New Book Clarifies Butter's Spread and Chronicles Its Wars With Margarine*, Smithsonian.com (Nov. 21, 2016) ("For decades there's been a huge butter versus margarine debate").

> I was hosting a dinner party for friends once, when someone asked me to pass the butter. The woman, a neighbor, hesitated for a moment, and then asked if it was butter or margarine.
>
> "Butter," I said.
>
> "Oh, good," she said.
>
> Someone else nodded in agreement. Another declared he hadn't had margarine in years.
>
> Soon the margarine-bashing began. The color: too yellow. The texture: waxy. A friend's husband went so far as to say he always knew what kind of house he was in by the butter or butter substitute they served, and those homes that served butter substitutes would not have him as guest again anytime soon. You'd think someone had mentioned taxes or lutefisk, so palpable was the disgust.[22]

64.   Food scientists who have studied the usage of butter vis-à-vis vegetable oil-based margarine confirmed these strong sentiments, noting that "consumers appeared to fall primarily into two groups: butter-only consumers, and margarine + butter consumers," because margarine loyalists "often used butter for special occasions or for baking."[23]

65.   Another study came to a similar conclusion – though margarine users are open to having butter, those who prefer butter are unlikely to use margarine.[24]

66.   The studies support the notion that it is misleading to promote a product containing butter that also contains vegetable oils due to the consumer preferences associated with these foods.

IV. The Products Contain Less Butter Than Advertised

67.   The front label of the Original Products contain a pat of butter.

---

[22] Paula Carter, *Margarine: A Public and Personal History*, The Rumpus, Aug. 2 2013, accessed 23 November 2017.
[23] A.J. Krause, *Identification of the Characteristics that Drive Consumer Liking of Butter*, Journal of Dairy Science (2007).
[24] M. Michicich, *Consumer Acceptance, Consumption and Sensory Attributes of Spreads Made from Designer Fats*, Food Quality and Preference (1999).

68.    The standard size pat of butter is equivalent to half a tablespoon.[25]

69.    Half a tablespoon of butter contains on average 3.5% of the daily value of Vitamin A.[26]





70.    Because the Products have zero percent vitamin A, the representation that one serving size depicted on the front label contains the amount of butter represented by the pat, is false, deceptive, misleading and not true.

V.  Fresh Claims

71.    The Products make extensive use of the term "fresh" and "real" in a misleading and deceptive manner.

---

[25] https://www.basenjimom.com/pat-of-butter/
[26] https://www.nutritionix.com/i/usda/butter-salted-1-tbsp/513fceb375b8dbbc21000003

72.    "Fresh" is used in a way to suggest or imply the food is unprocessed in its raw state and has not been frozen or subjected to any form of thermal processing or any other form of preservation.[27]

73.    The Products are represented as "fresh" by the statements "Made with Fresh Potatoes," "Made with 100% Fresh Potatoes" and "farm-fresh goodness," though they are never actually claimed to be "fresh" Products.

74.    In so doing, defendant is taking advantage of erroneous consumer beliefs which have shown that 80% of consumers erroneously believe refrigerated mashed potatoes are fresh.

75.    If defendant had performed a cursory investigation, it would have discovered the "2014 Simply Potatoes Digital Brochure," created by a leading mashed potatoes company.

76.    These materials were directed not to consumers, but to food service providers, and stated: "fresh matters. 93% of consumers rate freshness of food as important to selecting a restaurant.* 83% of consumers believe refrigerated potatoes are fresh.*" (emphasis added).

77.    These erroneous beliefs exist despite the extended shelf-life of refrigerated mashed potatoes due to use of artificial preservatives.

78.    The percentage of consumers who have this erroneous belief was obtained from an exclusive survey performed by Datassential, one of the most sophisticated data mining and food industry research outfits in the country, in February 2014.

79.    "Fresh" refrigerated mashed potatoes exist, sold in grocery stores which sell the defendant's Products, in close proximity.

80.    For mashed potatoes, a reasonable consumer understands "fresh" to mean they were "just prepared."

---

[27] 21 C.F.R. § 101.95.

15

81.   Store-made and sold mashed potatoes have a limited shelf-life and are fresh because they lack chemical preservatives, including sodium benzoate, disodium pyrophosphate, potassium sorbate and sodium bisulfite.

82.   However, mass marketed refrigerated potato products such as the Products cannot be fresh because fresh mashed potatoes have a shelf-life between 7 and 10 days.

83.   The Products are not fresh because their 3-month shelf life is due to artificial chemical preservatives including potassium sorbate and sodium acid pyrophosphate.

84.   These preservatives change the nature of an uncomplicated food – basic mashed potatoes (what consumers want) – to an artificial product they would avoid if they knew the truth.

85.   Potassium sorbate, which inhibits microbial growth, is made through adding potassium carbonate to a solution of sorbic acid in a solvent of acetone, heating the mixture to reflux temperature and recovering potassium sorbate from the reaction mixture.

86.   Sodium pyrophosphate prevents and reverses naturally occurring discoloration, or "after-cooking darkening, and is made through treating phosphoric acid with a sodium compound.

87.   "Real" is used and understood synonymously with fresh, to refer to a food in its least modified condition, available for safe consumption.[28]

88.   It is obvious that the potatoes used for the Products are "real" – they are not an illusion or "fake" potatoes.

89.   Defendant's use of the term "real" - "real potatoes," "made with real potatoes" – does not seek to reassure consumers the potatoes they buy will disappear before they get home.

90.   Rather, "real" is used as a descriptor to distinguish the Products, by reference to their

---

[28] Elaine Watson, What does health and wellness mean to US Consumers? Jan. 28, 2016 ("people are thinking more about minimally processed real foods rather than thinking, 'What's good for my heart?'").

16

ingredients (potatoes).

91.    The only possible meaning and implication of "real" as it relates to the potato ingredients is misdirection: yes, the potatoes are not modified or altered prior to the time they are converted into mashed potatoes; but this has no bearing on the quality or composition of the final product.

92.    Instead, it confuses consumers who already are misinformed with respect to freshness of mass-produced mashed potatoes.

93.    No reasonable consumer expects that a simple, uncomplicated product like mashed potatoes, which touts as being "Made with Fresh Potatoes, Real Milk & Butter" will contain vegetable oils and artificial preservatives.

VI. Failure to Describe Ingredients with Common or Usual and/or non-Misleading Names

94.    Over the past several years, defendant has utilized various combinations of butter and vegetable oils to enhance the texture of the Products.

95.    These are known in industry as "butter blends" because they contain milkfat and vegetable oils – Butter with Olive Oil, Whipped Butter Blend Margarine and Spreadable Butter with Canola Oil.

   



96.     The Products' composition is carefully formulated so that the milkfat portion exceeds the vegetable oil portion in an attempt to justify their emphasis on butter.

97.     It is misleading to promote "butter" on the front label because even if the ingredients are added to the food separately, consumers are accustomed to butter products identifying the presence of vegetable oils as modifying components of them.

98.     Due to the pace at which product labels are updated, and by searching for internet pages of several years ago (cached pages), it is possible to reconstruct the different formulations of butter and vegetable oils used and how that was indicated.

99.     In December 2016, the mid-Atlantic region supermarket chain Giant Eagle listed the Original Products on its website:[29]

## Ingredients

Potatoes, Whole Milk, Butter (Cream, Salt), Margarine (Liquid and Partially Hydrogenated Soybean Oil, Water, Salt, Whey, Soy Lecithin, Mono and Digycerides, Sodium Benzoate [Preservative], Artificial Flavor, Vitamin A Palmitate), Contains 2% Or Less of: Salt, Potassium Sorbate (Preservative), Sodium Acid Pyrophosphtae, Spice, Artificial Color, Mono and Diglycerides.

---

[29]http://webcache.googleusercontent.com/search?q=cache:-rVqx36bPu0J:www.shoprite.com/pd/Bob-Evans/Potatoes-Mashed-Original/32-oz/075900005349/+&cd=33&hl=en&ct=clnk&gl=us

Potatoes, <mark>Whole Milk, Butter (Cream, Salt), Margarine (Liquid and Partially Hydrogenated Soybean Oil, Water, Salt, Whey, Soy Lecithin, Mono and Diglycerides, Sodium Benzoate [Preservative], Artificial Flavor, Vitamin A Palmitate),</mark>

100. At a point after 2016, according to an online grocer, margarine disappeared and was replaced by the more palatable term "dairy blend:"[30]

<mark>Dairy Blend (Milk, Butter [Cream, Salt], Soybean Oil and/or Canola Oil, Salt, Natural Flavor, Monoglycerides)</mark>



**Ingredients**

Potatoes, Dairy Blend (Milk, Butter [Cream, Salt], Soybean Oil and/or Canola Oil, Salt, Natural Flavor, Monoglycerides), Cheddar Seasoning (Cheddar Cheese [Milk, Cheese Culture, Salt, Enzymes], Maltodextrin, Salt, Buttermilk, Soybean Oil, Whey, Nonfat Milk, Cream, Yeast Extract, Natural and Artificial Flavors, Onion Powder, Dextrose, Garlic Powder, Lactic Acid, Citric Acid, Dextrin, Modified Corn Starch, Spice, Corn Syrup Solids, Dairy Cultures, Contains Less than 2% of Silicon Dioxide [to Prevent Caking]), Cheese (Cheddar Cheese [Cultured Milk, Salt, Enzymes], Water, Salt), Salt, Potassium Sorbate (to Maintain Freshness), Sodium Acid Pyrophosphate (to Maintain Color).

101. The spring 2018 version of the White Cheddar Products no longer lists "Dairy Blend" but "Butter Blend."

INGREDIENTS: POTATOES, BUTTER BLEND (MILK, BUTTER [CREAM, SALT]), SOYBEAN OIL AND/OR CANOLA OIL, SALT, NATURAL FLAVOR, MONOGLYCERIDES), CHEDDAR SEASONING (CHEDDAR CHEESE [MILK, CHEESE CULTURE, SALT, ENZYMES], MALTODEXTRIN, SALT, BUTTERMILK, SOYBEAN OIL, WHEY, NONFAT MILK, CREAM, YEAST EXTRACT, NATURAL AND ARTIFICIAL FLAVORS, ONION POWDER, DEXTROSE, GARLIC POWDER, LACTIC ACID, CITRIC ACID, DEXTRIN, MODIFIED CORN STARCH, SPICE, CORN SYRUP SOLIDS, DAIRY CULTURES, CONTAINS LESS THAN 2% OF SILICON DIOXIDE [TO PREVENT CAKING]), CHEESE (CHEDDAR CHEESE [PASTEURIZED MILK, CHEESE CULTURE, SALT, ENZYMES], WATER, SALT), SALT, SODIUM ACID PYROPHOSPHATE, POTASSIUM SORBATE (TO MAINTAIN FRESHNESS).

Ingredients: Potatoes, <mark>Butter Blend (Milk, Butter [Cream, Salt], Soybean Oil and/or Canola Oil, Salt, Natural Flavor, Monoglycerides)</mark>

102. That this listing is from spring 2018 is shown from the entire back panel which cites survey data as of April 2018.

---

[30] https://www.food4less.com/p/bob-evans-cheddar-mashed-potatoes/0007590000521

Back Label



DISTRIBUTED BY: BEF FOODS, INC.
NEW ALBANY, OHIO 43054-1183
©2018 BOB EVANS FARMS, LLC

*SOURCE: IRI SCAN SALES DATA TOTAL
U.S. 52 WEEKS ENDING APRIL 22, 2018

103. A 2017 listing of the ingredients has dispensed with "butter blend" in favor of "butter (cream, salt)," while splitting up the Soybean Oil, Canola Oil, Salt, Natural Flavor and Mono & Diglycerides.

**INGREDIENTS:** POTATOES, MILK, BUTTER (CREAM, SALT), SOYBEAN AND/OR CANOLA OIL, SALT, NATURAL FLAVOR, MONO & DIGLYCERIDES, CONTAINS LESS THAN 2% OF BLACK PEPPER, POTASSIUM SORBATE [TO MAINTAIN FRESHNESS], SODIUM ACID PYROPHOSPHATE.

Ingredients: Potatoes, Milk, Butter (Cream, Salt), Soybean and/or Canola Oil, Salt, Natural Flavor, Mono & Diglycerides

## VII. Plausible Explanation as to Changing Ingredient List Order

104. Because a butter margarine blend is not a standardized food nor has a common or usual name, its component ingredients are required to be separated out by order of predominance by weight, as defendant correctly does in the 2017 label above.

105. In most instances where an end-user producer will require an ingredient that consists of butter and vegetable oils, they will purchase a "blend" to add directly, to limit processing issues.

20

106.   This means defendant received an ingredient from a supplier, listed the components of the compound ingredient in the correct way on the ingredient list, but only promoted part of that compound industrial ingredient on the front labels, where there were no requirements as to representing ingredients like exist for the ingredient list, other than to not mislead.

107.   The Products are more appropriately identified as Mashed Potatoes with (1) Butter-Vegetable Oil Blend or (2) Imitation Margarine.

108.   Standardized margarine is a mixture of (1) edible fats and/or oils, (2) various aqueous phase ingredients including water, milk or milk products, (3) Vitamin A (15,000 IU) and optional ingredients such as (1) salt, (2) emulsifiers and (3) flavoring substances.[31]

109.   Since the Products lack a sufficient amount of Vitamin A, they are accurately described as a nutritionally inferior and/or modified margarine.

110.   The Products' ingredient list discloses the presence of milk products – butter, emulsifiers (mono- and diglycerides) and flavoring substances ("natural flavor").[32]

VIII.     "Natural Flavor" in Products is Likely Butter Flavor

111.   It is likely that the natural flavor in the Products is that flavor permitted by the margarine standard of identity, which permits the addition of flavoring substances.

112.   These flavoring substances are represented in the Products as the "natural flavor" ingredient. 21 C.F.R. §166.110(b)(7) ("If the flavoring ingredients impart to the food a flavor other than in semblance of butter, the characterizing flavor shall be declared as part of the name of the food in accordance with §101.22 of this chapter.").

113.   Though the natural flavor provides a flavor "in semblance of butter," it is misleading

---

[31] 21 C.F.R. §166.110(a) ("Margarine.").
[32] 21 C.F.R. §166.110(a)(2)(i), (b)(4), (b)(7).

21

to fail to declare the flavoring as part of the name of the food.

114.   This is because the Products are promoting butter so the consumer will believe the flavor derives exclusively from butter, since natural flavor is only declared on the ingredient list in small print.

115.   The definition of butter established by Congress does not permit "natural flavor" to be added to the food known as butter.[33]

IX. Products are Misleading Because Descriptions are not Uniform Among Similar Foods

116.   Competitor refrigerated mashed potatoes of Hormel Foods and Pineland Farms adjacent to defendant's on grocery shelves, below, only use butter, which indicates there are no technological challenges in food processing which necessitate the use of vegetable oil alternatives.

|  Front Label | Ingredients |
| --- | --- |



INGREDIENTS: COOKED POTATOES (POTATOES, WATER), MILK WITH VITAMIN D3, BUTTER (CREAM AND SALT), CONTAINS 2% OR LESS OF CREAM, SALT, ANTIMICROBIAL BLEND (MALTODEXTRIN, CULTURED DEXTROSE, SODIUM DIACETATE, NISIN PREPARATION [SALT, NISIN], EGG WHITE LYSOZYME), POTASSIUM SORBATE (PRESERVATIVE), WATER, TITANIUM DIOXIDE (COLOR), SODIUM ACID PYROPHOSPHATE, SPICE, FLAVORING.

Ingredients: Cooked Potatoes (Potatoes, Water), Milk with Vitamin D3, Butter (Cream and Salt), Contains 2% or less of Cream, Salt, Antimicrobial Blend (Maltodextrin, Cultured Dextrose, Sodium Diacetate, Nisin Preparation [Salt, Nisin], Egg White Lysozyme), Potassium Sorbate (Preservative), Water, Titanium Dioxide (Color), Sodium Acid Pyrophosphate, Spice, Flavoring.

---

[33] 21 U.S. Code § 321a. "Butter" defined



Ingredients: Potatoes, Whole Milk, <mark>Butter</mark>, Water, Salt, Cultured Dextrose.

117.  The Products' descriptions are misleading because it is not uniform among all identical or similar products where butter is the exclusive fat or oil source.

118.  Where two similarly labeled products are situated in the same category or section of a store and their representations as to quality and fill are identical yet the former is lacking the quantity of the characterizing ingredient (butter) or qualities (absence of ingredients not associated with the characterizing ingredients – vegetable oils), the reasonable consumer will be deceived.

119.  They will and did pay more money for the inferior former product under false impression.

X.  Conclusion

120.  The labeling of a food with two or more ingredients is misleading by designation of such food with a name which includes or suggests the name of one but not all ingredients, even though the names of all such ingredients are stated elsewhere in the labeling.[34]

121.  The Products contain butter and vegetable oils and their name only suggests butter,

---

[34] 21 C.F.R. § 101.18(b)

even though vegetable oils are listed on the back of the package.

122.  The labeling and appearance of the Products creates an erroneous impression that butter and milk (dairy components) constitute the entirety of the fats used, and that they are present in an amount greater than is actually the case.

123.  The proportion of this component has a material bearing on price or consumer acceptance of the Products because it is more expensive and desired by consumers.

124.  Had Plaintiff and Class members known the truth about the Products, they would not have bought the Product or would have paid less for it.

125.  The Products contain other representations which are misleading and deceptive such as the claim of the absence of artificial colors – sodium pyrophosphate has been alleged as artificial ingredient and is used among other reasons to maintain color.

126.  As a result of the false and misleading labeling, the Products are sold at premium prices – no less than $2.99 per 680 g oz (24 oz) excluding tax – compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

127.  Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

128.  Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

129.  This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

130.  Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

131.  A substantial part of events and omissions giving rise to the claims occurred in this

District.

Parties

132.   Plaintiffs are citizens of the States indicated below and reside in the county designated within that State.

133.   Plaintiffs below seek to represent a national class and state sub-classes of consumers in the states where they reside and purchased the products or services.

134.   If indicated, plaintiffs may have purchased the products or services in states other than where they currently reside due to reasons including (i) residence in proximity to or near state line such that it is customary for consumers to engage in multi-state transactions, (ii) change of residence within the statutory time period for the causes of action such that they purchased the products or services in more than one state.

135.   Plaintiff Boubacar Sarr is a citizen of New York, Kings County.

136.   Plaintiff Glenn Liou is a citizen of New York, Bronx County.

137.   Plaintiff Kellie J. Nyanjom is a citizen of Kansas, Sedgwick County.

138.   Plaintiff Chris Dean is a citizen of Maryland, Anne Arundel County.

139.   Plaintiff Kay Jackson is a citizen of Florida, Brevard County.

140.   Plaintiff Paula Leblanc is a citizen of Massachusetts, Middlesex County.

141.   Plaintiff Jennifer Stephens is a citizen of Idaho, Elmore County.

142.   Plaintiff Steve Altes is a citizen of California, Los Angeles County.

143.   Plaintiff Jared D'Argenio is a citizen of Florida, Palm Beach County.

144.   Plaintiff Rachel Parks is a citizen of Virginia, Grayson County.

145.   Plaintiff Rachel Parks purchased the Products or Services in Ashe County, North Carolina.

25

146.    Plaintiff Brenda Rodgers is a citizen of Ohio, Lucas County.

147.    Plaintiff Charles Wiley is a citizen of New Mexico, Bernalillo County.

148.    Jane Doe plaintiffs are citizens of the 39 states for which the identity of a named plaintiff has not been disclosed, but who were affected in the same manner as the Named Plaintiffs.

149.    The allegations as related to laws of other states where no named plaintiff has been disclosed serves as a placeholder upon joinder or amendment.

150.    Defendant is an Ohio corporation with its principal place of business in New Albany, Ohio.

151.    During the class period, Named Plaintiffs and Jane Doe Plaintiffs purchased one or more of the Products for personal use, consumption or application with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within their states and/or other states as described.

152.    Named Plaintiffs and Jane Doe Plaintiffs purchased the Products based upon the representations on the packaging.

153.    Named Plaintiffs and Jane Doe Plaintiffs would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

<u>Class Allegations</u>

154.    The classes will consist of all consumers in all 50 states with sub-classes for the individual states.

155.    The Named Plaintiffs of: New York, Kansas, Maryland, Massachusetts, Idaho, California, Florida, Virginia, North Carolina, Ohio, New Mexico, will represent the state sub-class of persons who purchased any Products containing the actionable representations during the statutes of limitations.

156.   Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if Named Plaintiffs and Jane Doe Plaintiffs and class members are entitled to damages.

157.   Named Plaintiffs' and Jane Doe Plaintiffs' claims and the basis for relief are typical to other members because all were subjected to the same representations.

158.   Named Plaintiffs are adequate representatives because their interests do not conflict with other members.

159.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

160.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

161.   Named Plaintiffs' and Jane Doe Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

162.   Plaintiffs seek class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350, California Consumers<br>Legal Remedies Act, Civ. Code §§ 1750-1785 ("CLRA")<br>and Consumer Protection Statutes of Other States and Territories</u>

163.   Named Plaintiffs and Jane Doe Plaintiffs assert causes of action under the consumer protection statutes of the all 50 states, with Named Plaintiffs asserting the consumer protection laws of their individual states.

a.   Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;
b.   Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;
c.   Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;
d.   California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;

27

e.   Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;
f.   Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;
g.   Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;
h.   District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;
i.   Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes*§ 501.201, *et. seq.*;
j.   Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;
k.   Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;
l.   Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;
m.   Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;
n.   Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;
o.   Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;
p.   Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;
q.   Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;
r.   Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;
s.   Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;
t.   Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;
u.   Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;
v.   Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;
w.   Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;
x.   Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;
y.   Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;
z.   New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;
aa.  New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;
bb.  New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;
cc.  New York General Business Law ("GBL") §§ 349 & 350;
dd.  North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;
ee.  Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;
ff.   Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;
gg.  Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);
hh.  Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;
ii.   South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;
jj.   South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;
kk.  Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;
ll.   Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;
mm. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;
nn.  West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

oo. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*

164. Named Plaintiffs and Jane Doe Plaintiffs and class members assert causes of action under the consumer protection laws of their States, *supra*.

165. Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair.

166. Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

167. Named Plaintiffs and Jane Doe Plaintiffs reasonably believed based on defendant's representations that the Products contained butter and not vegetable oils, were fresh, and did not contain added natural flavoring.

168. Named Plaintiffs and Jane Doe Plaintiffs and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product or service type.

169. After mailing appropriate notice and demand, Jane Doe California and Massachusetts Plaintiffs and other plaintiffs who reside in a State where notice is required prior to seeking damages under that State's Consumer Protection Statutes, will have mailed and/or have amended the present complaint to request damages. Cal. Civil Code § 1782(a), (d); Mass. UDAP, Mass. Gen Laws ch. 93A.

170. Where applicable, subclasses of plaintiffs will seek injunctive and equitable relief and attorney fees for violations of relevant law, i.e., CLRA for California Subclass. Civ. Code § 1780(a); Cal. Bus. & Prof. Code § 17203.

171. The representations and omissions were relied on by Named Plaintiffs and Jane Doe Plaintiffs and class members, who paid more than they would have, causing damages.

<u>Negligent Misrepresentation</u>

29

172.   Named Plaintiffs and Jane Doe Plaintiffs and class members incorporate by reference all preceding paragraphs.

173.   Defendant misrepresented the misrepresented the substantive, compositional, organoleptic, sensory and/or other attributes of the Products.

174.   Defendant misrepresented the composition of the Products (1) by highlighting butter, giving consumers the impression that they only contained butter to the exclusion of non-dairy based fat ingredients, since consumers do not use butter and vegetable oils on mashed potatoes and (2) implying the Products were fresh, which took advantage of mistaken consumer beliefs, when the Products are not fresh.

175.   Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

176.   This duty is based, in part, on defendant's position as a (1) trusted brand who has made homestyle fare for Americans for decades from the chain of popular restaurants with the Bob Evans name and (2) an entity which has held itself out as having special knowledge in the production, service and/or sale of the product or service type.

177.   The representations took advantage of cognitive shortcuts made by consumers at the point-of-sale and their trust placed in defendant, a well-known and widely recognized and respected brand in this sector.

178.   Named Plaintiffs and Jane Doe Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

179.   Named Plaintiffs and Jane Doe Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Breach of Express Warranty and Implied Warranty of Merchantability,
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

180.   Named Plaintiffs and Jane Doe Plaintiffs incorporate by reference all preceding paragraphs.

181.   Defendant manufactures and sells products which contain characterizing ingredients, flavors or qualities (absence of vegetable oils) which is desired by consumers.

182.   The Products warranted to Named Plaintiffs and Jane Doe Plaintiffs and class members that they possessed substantive, compositional, organoleptic, sensory, physical and/or other attributes when they did not.

183.   As a result, the Products lacked those attributes which are present in mashed potato products which contain butter to the exclusion of vegetable oils and which are fresh.

184.   Defendant warranted to plaintiff and class members that the Products did not contain non-dairy fat ingredients and were fresh when this was not truthful and was misleading.

185.   Since it is not conceivable to have mashed potatoes with dairy and non-dairy lipids, no reasonable consumer would expect the Products to contain vegetable oils.

186.   Defendant had a duty to disclose and/or provide a non-deceptive description of the Products and knew or should have known same were false or misleading.

187.   This duty is based, in part, on defendant's position as one of the largest users of the characterizing ingredient or flavor in the world.

188.   Named Plaintiffs and Jane Doe Plaintiffs desired to purchase products which were as described by defendant.

189.   The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions and were not merchantable.

190.   To the extent notice may be required, Named Plaintiffs and Jane Doe Plaintiffs either

have sent or intend to send notice to defendant and reserve all rights to amendment of the complaint.

191.  Named Plaintiffs, Jane Doe Plaintiffs and class members relied on defendant's claims, paying more than they would have.

<u>Fraud</u>

192.  Named Plaintiffs and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

193.  Defendant's intent in making the "Made with Fresh Potatoes, Real Milk & Butter" claims was to take advantage of consumers' common expectations, which do not expect mashed potatoes to have butter and vegetable oils and wrongly think refrigerated mashed potatoes are fresh.

194.  Defendant's actions were motivated by increasing their market share amongst the many rival mashed potato companies.

195.  Defendant's purpose was to sell a product which contained a valuable characterizing ingredient, flavor or qualities (i.e., absence of vegetable oils) and represent the Products contained sufficient independent amounts of said ingredient or flavor or qualities.

196.  Defendant's fraudulent intent is evinced by its failure to adequately ascertain how consumers think about refrigerated, mass-produced mashed potatoes and indicating a specific amount of butter was contained in a serving of the Products.

197.  Named Plaintiffs and Jane Doe Plaintiffs and class members observed and relied on defendant's omissions and claims, causing them to pay more than they would have, entitling them to damages.

<u>Unjust Enrichment</u>

198.  Named Plaintiffs and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

199.  Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Named Plaintiffs and Jane Doe Plaintiffs demand a jury trial on all issues.

  **WHEREFORE,** plaintiffs pray for judgment:

1.  Declaring this a proper class action, certifying named plaintiffs as representatives and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove and/or refrain from the challenged representations, restitution and disgorgement for members of the State Subclasses pursuant to the consumer protection laws of their States;

4.  Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and consumer protection law claims, and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   June 29, 2019

                                                   Respectfully submitted,

                                                   Sheehan & Associates, P.C.
                                                   /s/Spencer Sheehan
                                                   Spencer Sheehan (SS-8533)

505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

1:18-cv-06409-ARR-RLM
United States District Court
Eastern District of New York

Boubacar Sarr individually and on behalf of all others similarly situated

Plaintiff

- against -

BEF Foods, Inc.

Defendant

# First Amended Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
   Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  June 29, 2019

                                                          /s/ Spencer Sheehan
                                                          Spencer Sheehan