United States District Court
Eastern District of New York

1:18-cv-06409-ARR-RLM

Boubacar Sarr, individually and on behalf of
all others similarly situated

                                  Plaintiff

                   - against -

BEF Foods, Inc.

                                  Defendant

Plaintiffs' Memorandum of Law in Opposition
to Defendant's Motion to Dismiss the
First Amended Complaint

SHEEHAN & ASSOCIATES, P.C.
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
spencer@spencersheehan.com

Attorneys for Plaintiffs

Table of Contents

Table of Authorities ................................................................................................... 2

Introduction ................................................................................................................ 2

I.    Legal Standard on Motion to Dismiss ................................................................ 2

      A.   Factual Allegations Should be Accepted as True ..................................... 2

      B.   Plaintiff has Shown that it is Plausible a Reasonable Consumer
          Would be Misled ..................................................................................... 3

      C.   New York General Business Law 349 and 350 Provide Relief
          Where a Defendant Engages in Deceptive Acts ...................................... 3

II.   Defendant Disregards the Relationship Between Butter and its Vegetable Oil
    Imitators ............................................................................................................. 4

      A.   Reasonable Consumers Are Misled By Promotion of Butter in
          Mashed Potatoes and Expect they Will Not Contain Vegetable Oils ................... 6

      B.   The FAC Provides Support for Reasonable Consumers' Preferences ................... 7

III.  The Products are Misrepresented as "Fresh" ........................................................ 7

IV.  Products are Misleading Because Front Label Fails to disclose natural flavor ..................... 9

V.   The FAC Adequately Pleads Injury .................................................................... 11

VI.  Plaintiff's Unjust Enrichment Claims are Adequately Pleaded ........................... 12

VII. Plaintiff's Express and Implied Warranty Claims are Sufficient ....................... 12

      A.   Privity is Not Required .......................................................................... 13

      B.   Defendant's Claim of Lack of Pre-Suit Notice is Conclusory ............................. 15

         1.   Whether Notice is Sufficient is a Question of Fact ......................... 16

         2.   Pre-Suit Notice Not Required .......................................................... 16

VIII. PlaintiffS Plausibly Alleges Defendant's Fraudulent Intent ................................ 17

IX.  Nationwide and non-new york State claims are Sufficient at Pleading Stage ................... 20

2

A.  Pleading Stage Does Not Require Plaintiffs to Allege Specific Statutes Violated Nor their Elements................................................................... 22

B.  The Court Need Not Dismiss the Claims of Prospective Plaintiffs from States where Consumer Protection Laws are Not Listed ........................... 24

X.  Plaintiff has Standing to Seek Injunctive Relief ................................................ 24

XI.  Conclusion........................................................................................................... 25

**TABLE OF AUTHORITIES**

**Cases**

*Ackerman v. Coca-Cola Co.*,
 No. 09-cv-395, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ................................................. 25

*Allen v. Conagra Foods, Inc.*,
 No. 13-cv-01269, 2018 WL 6460451 (N.D. Cal. Dec. 10, 2018) ........................................... 21

*Allen v. Conagra Foods, Inc.*,
 No. 13-cv-01269, 2019 U.S. Dist. LEXIS 122807 (N.D. Cal. Jul. 22, 2019) ........................ 21

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................................. 2

*Avola v. Louisiana-Pacific Corp.*,
 991 F.Supp.2d 381 (E.D.N.Y. 2013) ...................................................................................... 13

*Belfiore v. Procter & Gamble Co.*,
 F.Supp.3d 440 (E.D.N.Y. 2014) ............................................................................................. 24

*Belfiore v. Procter & Gamble Co.*,
 No. 14-cv-4090, 311 F.R.D. 29, 2015 WL 5781541 (E.D.N.Y. Oct. 5, 2015) ........................ 4

*Bell Atl. Co. v. Twombly*,
 550 U.S. 544 (2007) ................................................................................................................. 2

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) ................................................................................................................. 3

*Berger v. MFI Holding Corporation*,
 No. 17-cv-06728 (E.D.N.Y. Apr. 3, 2019) ............................................................................... 5

*Born v. Schrenkeisen*,
 110 N.Y. 55 (1888) ................................................................................................................. 24

*CBS Inc. v. Ziff-Davis Publ'g Co.*,
 553 N.E.2d 997 (N.Y. 1990) ................................................................................................... 13

*Corsello v. Verizon N.Y., Inc.*,
 18 N.Y.3d 777 (2012) ............................................................................................................. 12

*Daniel v. Mondelez Int'l, Inc.*,
 287 F.Supp.3d 177 (E.D.N.Y. 2018) ...................................................................................... 11

*Delgado v. Ocwen Loan Servicing Company, LLC*,
   No. 13-cv-4427, 2014 U.S. Dist. LEXIS 135758,
   2014 WL 4773991 (E.D.N.Y. Sept. 23, 2014) ...................................................... 25

*Donahue v. Ferolito, Vultaggio & Sons*,
   13 A.D.3d 77 (N.Y. 1st Dep't 2004) ................................................................... 13

*Ebin v. Kangadis Food Inc.*,
   No. 13-cv-2311, 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) ............................. 13

*Famous Horse Inc. v. 5th Ave. Photo Inc.*,
   624 F.3d 106 (2d Cir. 2010) ................................................................................. 2

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ................................................................................. 4

*Fischer v. Mead Johnson Labs.*,
   41 A.D.2d 737, 341 N.Y.S.2d 257 (1st Dep't. 1973) ............................................ 17

*Foman v. Davis*,
   371 U.S. 178 (1962) ............................................................................................ 25

*Gant v. Wallingford Bd. of Educ.*,
   69 F.3d 669 (2d Cir. 1995) ................................................................................... 2

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014) ..................................................................... 12

*Goshen v. Mutual Life Ins. Co. of N.Y.*,
   774 N.E.2d 1190, 98 N.Y.2d 314 (2002) ............................................................. 4

*Greene v. Gerber Products Co.*,
   262 F.Supp.3d 38 (E.D.N.Y. 2017) ................................................................ 20, 21

*Hanley v. Chicago Title Ins. Co.*,
   No. 12-cv-4418, 2013 WL 3192174 (S.D.N.Y. June 24, 2013) .............................. 2

*Harris v. Uhlendorf*,
   24 N.Y.2d 463 (1969) ......................................................................................... 22

*Henderson v. Gruma Corp.*,
   No. 10-cv-04173, 2011 U.S. Dist. LEXIS 41077,
   2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ....................................................... 6

*Hubbard v. Gen. Motors Corp.*,
   No. 95-cv-4362, 1996 WL 274018 (S.D.N.Y. May 22, 1996) ............................... 16

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
   No. 12-md-2413, 2013 WL 4647512
   (E.D.N.Y. Aug. 29, 2013) ............................................................................................ 20

*In re SKAT Tax Refund Scheme Litig.*,
   356 F.Supp.3d 300 (S.D.N.Y. 2019) ............................................................................ 12

*Izquierdo v. Mondelez Int'l, Inc.*,
   No. 16- cv-04697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ............................................ 11

*Johnson v. Nissan N. Am., Inc.*,
   272 F.Supp.3d 1168 (N.D. Cal. 2017) ................................................................................ 21

*Kennedy v. F.W. Woolworth Co.*,
   205 A.D. 648, 200 N.Y.S. 121 (1st Dep't. 1923) .................................................................. 17

*Koehler v. Litehouse, Inc.*,
   2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635
   (N.D. Cal. Dec. 13, 2012) .............................................................................................. 25

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015) .......................................................................................... 25

*Manchouck v. Mondeléz Int'l Inc.*,
   No. 13-cv 02148, 2013 U.S. Dist. LEXIS 138877,
   2013 WL 5400285 (N.D.Cal. Sept. 26, 2013) ...................................................................... 6

*Mantikas v. Kellogg Co.*,
   910 F.3d 633 (2d Cir. 2018) ............................................................................................ 4

*Mantikas v. Kellogg Co.*,
   No. 16-cv-2552, 2017 U.S. Dist. LEXIS 83311,
   2017 WL 2371183 (E.D.N.Y. May 31, 2017) ...................................................................... 4

*Nash v. Kornblum*,
   12 N.Y.2d 42 (1962) .................................................................................................... 24

*Neri v. R.J. Reynolds Tobacco Co.*,
   No. 98-cv-371, 2000 WL 33911224 (N.D.N.Y. Sept.28, 2000) ............................................ 17

*Niedernhofer v. Wittels*,
   No. 17-cv-4451 (S.D.N.Y. July 31, 2018) ........................................................................ 12

*O'Brien v. Nat'l Prop. Analysts Partners*,
   936 F.2d 674 (2d Cir. 1991) .......................................................................................... 19

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
   85 N.Y.2d 20 (1995) ...................................................................................................... 3

*Paulino v. Conopco, Inc.*,
No. 14-cv-5145, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ............................................ 16

*Plumbers & Steamfitters Local 137 Pension Fund v. American Express Co.*,
No. 15-cv-5999, 2017 WL 4403314 (S.D.N.Y. Sept. 30, 2017)............................................ 18

*Promuto v. Waste Mgmt., Inc.*,
44 F.Supp.2d 628 (S.D.N.Y. 1999) ....................................................................................... 13

*Quinn v. Walgreen Co.*,
958 F.Supp.2d 533 (S.D.N.Y. 2013) ..................................................................................... 16

*Randy Knitwear, Inc. v. American Cyanamid Co.*,
11 N.Y. 2d 5 (1962)............................................................................................................... 14

*Red v. Kraft Foods, Inc.*,
No. 10-cv-1028, 2012 U.S. Dist. LEXIS 164461,
2012 WL 5504011 (C.D. Cal. Oct.25, 2012) .......................................................................... 6

*Reyes v. Crystal Farms Refrigerated Distrib. Co.*,
No. 18-cv-2250, 2019 U.S. Dist. LEXIS 125971 (E.D.N.Y. July 26, 2019) .......................... 5

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir. 1994) ............................................................................................ 18, 20

*Silverstein v. R.H. Macy & Co.*,
266 A.D. 5, 40 N.Y.S.2d 916 (1st Dep't. 1943)..................................................................... 17

*Singleton v. Fifth Generation, Inc.*,
No. 15-cv-474, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016)................................................. 16

*U.S. ex rel. Polansky v. Pfizer, Inc.*,
No. 04-cv-0704, 2009 WL 1456582 (E.D.N.Y. May 22, 2009) ............................................ 18

*Webb-Weber v. Community, Inc.*,
23 N.Y.3d 448 (2014)............................................................................................................ 23

*Weisblum v. Prophase Labs, Inc.*,
88 F.Supp.3d 283 (S.D.N.Y. 2015) ....................................................................................... 14

*Weisman v. LeLandais*,
532 F.2d 308 (2d Cir. 1976) .................................................................................................... 2

*Wick v. Wabash Holding Corp.*,
801 F.Supp.2d 93 (W.D.N.Y. 2011) ...................................................................................... 13

*Williams v. Calderoni*,
   2012 U.S. Dist. LEXIS 28723 (S.D.N.Y. Mar. 1, 2012),
   *aff'd*, *Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013) ..................................... 3

*Woods v. Maytag Co.*,
   807 F.Supp.2d 112 (E.D.N.Y. 2011) ..................................................................... 2

*Yee Ting Lau v. Pret A Manger (Usa) Limited*,
   No. 17-cv-5775 (S.D.N.Y. Sept. 28, 2018) ............................................................ 11

**Statutes**

N.Y. General Business Law § 349 ............................................................................. 3

N.Y. General Business Law § 350 ............................................................................. 3

N.Y. U.C.C. § 2-313(1)(a) ...................................................................................... 14

N.Y. U.C.C. § 2-318 .............................................................................................. 15

N.Y. U.C.C. § 2-607 .............................................................................................. 15

**Other Authorities**

N.Y. U.C.C. § 2-313, cmt.2 .................................................................................... 15

**Rules**

Fed. R. Civ. P. 8(d) ............................................................................................... 12

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 2

Fed. R. Civ. P. 15(a)(2) .......................................................................................... 25

**Regulations**

21 C.F.R. § 101.95 ................................................................................................. 8

## INTRODUCTION

Plaintiffs submits this memorandum of law in opposition to defendant's Motion to Dismiss the First Amended Complaint ("FAC"), and Memorandum of Law in Support ("Def. MOL").  For the reasons below, the motion should be denied it in its entirety.

## I.    LEGAL STANDARD ON MOTION TO DISMISS

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007).

### A.    Factual Allegations Should be Accepted as True

A court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.*, No. 12-cv-4418, 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013) (citing *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and… determine whether they plausibly give rise to an entitlement of relief." *Woods v. Maytag Co.*, 807 F.Supp.2d 112, 118–19 (E.D.N.Y. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

B.    Plaintiff has Shown that it is Plausible a Reasonable Consumer Would be Misled

Plaintiffs need only assert factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's claim to relief must be "plausible on its face," *Id.* at 570, and a complaint fails if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557.

However, "[t]he plausibility standard [on a motion to dismiss] is not akin to a probability requirement." *Iqbal*, 556 U.S. at 559 129 S. Ct. at 1937. Plaintiffs need only "nudge" their allegations "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 548; *Williams v. Calderoni*, 2012 U.S. Dist. LEXIS 28723, at *20 (S.D.N.Y. Mar. 1, 2012) (in evaluating a complaint under a Rule 12(b)(6) standard, the Court need not accept "implausible allegations or legal conclusions expressed as facts"), *aff'd*, *Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013).

C.    New York General Business Law 349 and 350 Provide Relief Where a Defendant Engages in Deceptive Acts

The representations violate New York General Business Law ("GBL") §§ 349 and 350, prohibiting "[d]eceptive acts or practices" and "[f]alse advertising."

To state a claim pursuant to GBL §§ 349 and 350, a plaintiff must allege that: (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff was injured as a result. *See, e.g.*, *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995). Whether a particular act or practice is deceptive is intensely factual, and, therefore, motions to dismiss are disfavored. *See, e.g.*, *Sims v. First Consumers Nat. Bank*, 303 A.D. 2d 288, 289, 758 N.Y.S. 2d 284, 285-286 (1st Dept. 2003).

The purpose of these laws is "to secure an 'honest market place' where 'trust,' and not deception, prevails." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195, 98 N.Y.2d

3

314, 324 (2002) (citation omitted).

## II.   DEFENDANT DISREGARDS THE RELATIONSHIP BETWEEN BUTTER AND ITS VEGETABLE OIL IMITATORS

Defendant's position disregards the well-pleaded allegations of the FAC which when taken as true on a motion to dismiss, weigh heavily against dismissal.  Defendant claims "the truthful promotion of one ingredient in a food product [does not] creates a negative implication that some different ingredient is not in that product." *See Mantikas v. Kellogg Co.*, No. 16-cv-2552, 2017 U.S. Dist. LEXIS 83311, at *4-5, 2017 WL 2371183, at *4-5 (E.D.N.Y. May 31, 2017)("The truthful highlighting of one ingredient does not reasonably imply the absence of a different ingredient, especially when all ingredients are properly disclosed in the ingredient statement" appear to adequately support its position.") reversed *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018) (ingredient list disclaimer does not foreclose possibility of consumer deception).

A closer look reveals nuance and context, requiring a fact-intensive analysis. *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ( "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."); *Belfiore v. Procter & Gamble Co.*, No. 14-cv-4090, 311 F.R.D. 29, 38, 2015 WL 5781541, at *35 (E.D.N.Y. Oct. 5, 2015) (to establish a prima facie case under GBL § 349, "The entire mosaic is viewed rather than each tile separately.").

Defendant asks the Court to overlook the allegations of the FAC which are clear and consistent: butter and vegetable oils ("margarine") have forever been rival food products unlike any other foods which have existed. FAC ¶ 25, 28 (comparing production of butter – "churning the cream at the top of a cow's milk until the fat solidifies" with vegetable oils, that are "converted from liquid to solid through hydrogenation, fractionation and interesterification, in the presence of chemical and enzymatic catalysts").

4

The FAC plausibly alleged that the promotion of butter in mashed potatoes is an affirmative representation of the absence of margarine due to the context, relationship between butter and margarine and consumers' preferences. FAC, ¶ 23 ("The rivalry between these two foods is unlike any other which has existed, greater than that of any other foods which could allege to be rivals"); ¶ 27 (margarine "invented…to develop a lower quality and cheaper butter alternative"), ¶ 32 ("states banned the vegetable oil-based margarine because it was being dyed yellow to trick unwitting consumers") ¶ 30 ("Margarine producers fortified their product with Vitamin A to better imitate butter"), ¶ 17 ("When consumers eat mashed potatoes, they are typically prepared or consumed with fats and oils, like butter *or* vegetable oils (i.e., margarine).").

Defendant cites the recent decision in this district where a court faced a similar, yet not identical product. *Reyes v. Crystal Farms Refrigerated Distrib. Co.*, No. 18-cv-2250, 2019 U.S. Dist. LEXIS 125971, at *8-16 (E.D.N.Y. July 26, 2019).

Regrettably, defendant fails to cite *Berger v. MFI Holding Corporation*, No. 17-cv-06728 (E.D.N.Y. Apr. 3, 2019), where Judge Bianco, in a telephonic order, reached the opposite conclusion of Judge Garufis.  In *Berger*, the products made similar promotions of butter and omitted any reference to the lower quality vegetable oil fat ingredients on the front label. The court there denied the entirety of defendant's motion to dismiss, except for the implied warranty and unjust enrichment claims.  *See* ECF No. 35, Order at pp. 3-4, 11 ("With regard to the material misleading element, the plaintiff has plausibly alleged that a reasonable consumer could be misled by the claim made with real butter and milk on a product containing margarine…And plaintiff further plausibly alleged that one of the other claims on the packaging, a reasonable consumer might be misled about the word fresh as it relates to the product. Accordingly, I am denying the motion to dismiss those claims.").

5

Judge Bianco's decision does not mean that plaintiff's claims *here* should not be dismissed, any more than Judge Garufis' ruling means plaintiffs' claims should be dismissed.  District Judges, like anyone, are not required to defer to colleagues when considering issues which have more than one interpretation.

    A.    <u>Reasonable Consumers Are Misled By Promotion of Butter in Mashed Potatoes and Expect they Will Not Contain Vegetable Oils</u>

Defendant cites heavily to the "made with [N-ingredient]" food labeling cases in support of its position that any highlighted ingredient fails to mislead consumers. *Manchouck v. Mondeléz Int'l Inc.*, No. 13-cv 02148, 2013 U.S. Dist. LEXIS 138877, at *4, 2013 WL 5400285, at *4 (N.D.Cal. Sept. 26, 2013) ("Plaintiff has not plausibly alleged *why* the [truthful] statement "made with real fruit" would not include mechanically separated fruit purée"); *Henderson v. Gruma Corp.*, No. 10-cv-04173, 2011 U.S. Dist. LEXIS 41077, 2011 WL 1362188, at * 17 (C.D. Cal. Apr. 11, 2011) ("Plaintiffs do not provide a specific argument as to *how* this statement [made with garden vegetables] is misleading.") (emphasis added to highlight basis of dismissal); *Red v. Kraft Foods, Inc.*, No. 10-cv-1028, 2012 U.S. Dist. LEXIS 164461, at *3, 2012 WL 5504011, at *3 (C.D. Cal. Oct.25, 2012) ("made with real vegetables" does not mean a product is "composed of primarily fresh vegetables" and thus no support for plaintiffs' claims that the representations suggested the crackers were healthy)

In contrast to defendant's authorities which never alleged *why* and *how* one ingredient means more than the presence of that particular ingredient, the FAC clearly provides support for its argument.  FAC, ¶ 21 (that all-important decision – choosing butter or margarine), ¶ 23 (conflict between butter and margarine has been greater than that of any other food products), ¶ 53 ("To the extent reasonable consumers consume butter and margarine, this would only be done in separate foods").

B.   The FAC Provides Support for Reasonable Consumers' Preferences

According to defendant, the allegations "about home cooking practices and Internet recipes" not germane to "purchasing a ready-to-eat mashed potato product." FAC 58-59 ("When "mashed potatoes" is combined with "butter or margarine," Allrecipes.com retrieves 171 distinct, user-generated recipes which include "mashed potatoes" in the name (i.e., Whipped Mashed Potatoes, Rosemary Mashed Potatoes, etc.). In contrast, where "mashed potatoes" is combined with "butter and margarine," Allrecipes.com is unable to locate a single entry.").

Whether or not a reasonable consumer of ready-to-eat mashed potato products would expect that the purchased product would share certain features with how they would prepare it at home is a question of fact, not suitable for disposition on the present motion.

The FAC provided factual information extracted from the largest and most relevant consumer database in support of its argument that (1) reasonable consumers have strong preferences about butter and margarine, (2) mashed potatoes are expected to include a lipid ingredient such as butter or margarine when faced with the "naturally dry texture of potatoes," and (3) consumers do not expect butter and margarine to be present in the same mashed potato dish, whether made at home or purchased in the store. FAC, ¶ ("to enhance their texture, viscosity, palatability and to provide lubrication in the mouth."), ¶ 53("[Using butter and margarine] would only be done in separate foods")

III.   THE PRODUCTS ARE MISREPRESENTED AS "FRESH"

Defendant cleverly attempts to distort the FAC's argument with respect to plaintiffs' "fresh" claim.  ECF 13-1 at 15 ("made with 100% fresh potatoes" somehow communicates that the final Bob Evans mashed potato product is a fresh vegetable").

Defendant feigns incredulousness that "fresh" mashed potatoes could exist and attempts to offer regulatory support for its position. However, "'Fresh' refrigerated mashed potatoes exist, sold in grocery stores which sell the defendant's Products, in close proximity." FAC 79.

Nevertheless, 21 C.F.R. § 101.95 still sets forth parameters for the use of "fresh" on food labels. 21 U.S.C. § 101.95 ("[t]he term 'fresh,' when used on the label or in labeling of a food in a manner that suggests or implies that the food is unprocessed, means that the food is in its raw state and has not been frozen or subjected to any form of thermal processing or any other form of preservation").

Moreover, the FAC alleges the Products are not "fresh" "due to the addition of chemical preservatives." FAC, ¶ 46. The use of preservatives to extend a product's shelf-life yet still label it "fresh" was rejected by the FDA. 58 Fed. Reg. 3, 2401 at 2403 ("However, the agency does not agree that the use of the term "fresh" is appropriate if a food has been subjected to chemical treatments, including but not limited to antioxidants, antimicrobial agents, or preservatives").

Defendant's argument is simplistic and incorrect. Mem. at 15 ("There is no such thing as "fresh mashed potatoes" (absurdly referenced at Dkt. 10 ¶ 79) because potatoes have to be cooked before they can be mashed. Mashed potatoes are cooked vegetables, and therefore cannot be fresh vegetables.").

By this argument, there could be no such thing as "fresh juice," since fruits have to be squeezed before the juice is released or fresh pasta sauce. 58 Fed. Reg. 3, 2401 at 2403 ("expressed juices from raw produce could bear the term 'fresh'" but if the term were used to describe pasteurized juice, it would be misbranded); 21 C.F.R. § 101.95 ("the term "fresh" to describe pasta sauce that has been pasteurized or that contains pasteurized ingredients would be subject to paragraph (a) of this section because the term implies that the food is not processed or preserved.").

8

For juice, pasta sauce, bread, milk and countless other foods, "fresh" is applicable "where there are processed and unprocessed forms of the food available." 58 Fed. Reg. 3, 2401 at 2402. "Unprocessed" in this sense means a form of the food that has not been subjected to a form of preservation, such that "fresh" is not restricted to describing only raw agricultural commodities. Id. ("However, the agency does not agree that the use of the term "fresh" is appropriate if a food has been subjected to chemical treatments, including but not limited to antioxidants, antimicrobial agents, or preservatives, that introduce chemically active substances that remain in or on the food to preserve or otherwise affect the food."). In other words, "fresh" exists on a continuum because it relates to when the food was first in existence (i.e., juice expressed from raw produce).

"Fresh" refrigerated mashed potatoes exist, sold in grocery stores which sell the defendant's Products, in close proximity. Store-made and sold mashed potatoes have a limited shelf-life and are "fresh" because they lack chemical preservatives, including sodium benzoate, disodium pyrophosphate, potassium sorbate and sodium bisulfite." FAC, ¶ 76; 58 Fed. Reg. 3, 2401 at 2403 ("However, the agency does not agree that the use of the term "fresh" is appropriate if a food has been subjected to chemical treatments, including but not limited to antioxidants, antimicrobial agents, or preservatives").

## IV.  PRODUCTS ARE MISLEADING BECAUSE FRONT LABEL FAILS TO DISCLOSE NATURAL FLAVOR ON FRONT LABELS

Defendant claims that "cached Internet pages" to discern the way the Products were previously labeled lacks "anything to do with the presence or amount of butter in the Products or with any cognizable theory of consumer deception." 17.  This is wrong for numerous reasons.

First, "consumers are accustomed to butter products identifying the presence of vegetable oils as modifying components of them" on the front labels, making defendant's non-front label disclosure clearly relevant and also misleading.  97.

9

Second, because the Products are promoting butter on front label and fail to indicate the presence of vegetable oils anywhere other than the ingredient list, the consumer will believe the flavor derives exclusively from butter.  While margarine and vegetable oil blends are permitted to contain butter *flavor* and not declare it on the front label, butter is not permitted to have any kind of flavor added to it.

This analysis is consistent with FDA's thinking as evinced in Compliance Policy Guide, CPG Sec. 505.200 "Butter" Featured in Product Name, March 1988.

> BACKGROUND:
>
> There have been inquiries as to what is required to feature the word "butter" in the labeling of a product as "Butter Cookies," "Butter Shortbread," etc.
>
> POLICY:
>
> The Food and Drug Administration will consider a name "Butter _____ " or the use of the word butter in conjunction with the name as false and misleading unless all of the shortening ingredient is butter. If the product contains both butter and shortening but a sufficient amount of butter to give a characteristic butter flavor to the product, an appropriate name would be "butter flavored _____." However, if the product contains any artificial butter flavor it would have to be labeled in compliance with 21 CFR 101.22(i)(2). (highlighting added)

While the application of this CPG is intended to address the use of the word butter as part of a product name, the explanation provided offers insight for labeling of butter and artificial flavor outside of the specific context provided for by the margarine standard of identity.

The CPG addresses a situation where a product has butter but also a "shortening" component, which refers to solidified vegetable oils. The example considers a scenario where a butter-shortening combination ingredient "contains any artificial butter flavor" and states "it would

have to be labeled in compliance with 21 CFR 101.22(i)(2)."

In the context of the above CPG, "artificial butter flavor" refers to any flavor that simulates or mimics the flavor of butter as opposed to the definition of artificial flavor under 21 CFR 101.22.

The failure to declare the presence of butter flavor will cause the consumer to expect the food to contain more butter than it actually does.

Thus, declaring the natural flavor in the Products on the front label of such a product is required so the consumer will be alerted to the presence of non-butter fat components and not think the entire fat component is butter.

## V.   THE FAC ADEQUATELY PLEADS INJURY

New York state and federal courts as well as the Second Circuit often look for a "price premium" formulation in the pleadings to find cognizable injury, which is what the FAC provides. *Yee Ting Lau v. Pret A Manger (Usa) Limited*, No. 17-cv-5775 (S.D.N.Y. Sept. 28, 2018).

Defendant alludes to the FAC's failing to "identify a comparison product" upon which plaintiffs based his price premium allegations and cites *Izquierdo v. Mondelez Int'l, Inc*., No. 16-cv-04697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016), for the idea that she must do so.

But the notion that injury cannot be alleged absent a comparison product has been rejected by many other courts, making *Izquierdo* anomalous. *Daniel v. Mondelez Int'l, Inc.* held that "to the extent *Izquierdo* holds that Plaintiff must identify a precisely comparable product in order to allege a GBL section 349 or 350 claim under a price premium theory, *Izquierdo* contradicts the weight of the law in this Circuit. Courts routinely allow complaints that lack allegations of both cheaper and exactly comparable products to survive motions to dismiss." *Daniel v. Mondelez Int'l, Inc.*, 287 F.Supp.3d 177, 198 n.19 (E.D.N.Y. 2018).

As *Daniel* observed, a comparator product has never been a prerequisite of pleading a price premium under New York law. *See Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 481-82 (S.D.N.Y. 2014) (explaining that courts "have found valid [section] 349 claims despite plaintiffs not identifying competitors or prices" and that "while identifying the prices of competing products in the [c]omplaint would strengthen [the p]laintiff's allegation of injury," the allegations are not necessary to state a claim).

Since the standard at the pleading stage accepts the allegations of the FAC as true, it is not necessary or required for plaintiff to plead the location or time of the purchase, or what was her thought process when they purchased the Product.  These facts can be learned in discovery and through a deposition.

## VI.   PLAINTIFF'S UNJUST ENRICHMENT CLAIMS ARE ADEQUATELY PLEADED

Defendant's states an unjust enrichment claim is not available where it simply duplicates or replaces, a conventional contract or tort claim. *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).  Though correct that "[A] plaintiff may not plead the same claim more than once, which would constitute a duplicative claim," the Federal Rules permit pleading claims which "provide alternative bases for relief." Fed. R. Civ. P. 8(d); *In re SKAT Tax Refund Scheme Litig.*, 356 F.Supp.3d 300, 325 (S.D.N.Y. 2019).  The FAC's unjust enrichment is not duplicative of the contract or tort claims because plaintiffs' consumer protection law claims may not succeed, yet the unjust enrichment claim would provide relief.  *In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 325-26 (S.D.N.Y. 2019).

## VII.   PLAINTIFF'S EXPRESS AND IMPLIED WARRANTY CLAIMS ARE SUFFICIENT

For warranty claims, New York law requires "(i) a material statement amounting to a

warranty; (ii) the buyer's reliance on this warranty as a basis for the contract with his immediate seller; (iii) the breach of this warranty; and (iv) injury to the buyer caused by the breach. *Avola v. Louisiana-Pacific Corp.*, 991 F.Supp.2d 381, 391 (E.D.N.Y. 2013) (citing N.Y. U.C.C. § 2-313 (1)(a)); *Promuto v. Waste Mgmt., Inc.*, 44 F.Supp.2d 628, 642 (S.D.N.Y. 1999); *CBS Inc. v. Ziff-Davis Publ'g Co.*, 553 N.E.2d 997, 1003 (N.Y. 1990).  All of the claims in the FAC qualify as affirmations of fact, warranted by defendant to plaintiffs.

    A.   <u>Privity is Not Required</u>

Relying on *Weisblum v. Prophase Labs, Inc.*, defendant claims that the lack of privity dooms plaintiff's express and implied warranty causes of action must fail. *Weisblum v. Prophase Labs, Inc.*,88 F.Supp.3d 283, 287, 295-96 (S.D.N.Y. 2015); ECF 13-1 at 23-24; *see also Ebin v. Kangadis Food Inc.*, No. 13-cv-2311, 2013 WL 6504547, at *6 (S.D.N.Y. Dec. 11, 2013) and *Wick v. Wabash Holding Corp.*, 801 F.Supp.2d 93, 108 (W.D.N.Y. 2011) (privity required for implied warranty claim "except to recover for personal injuries"); *Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D.3d 77, 78 (N.Y. 1st Dep't 2004).

However, *Wesiblum* actually supports plaintiffs' warranty claims, with that court affirming the established principle under New York law "that a plaintiff need not be in privity with a defendant to bring such a claim based on misrepresentations contained in "public advertising or sales literature."" Citing Prue v. Fiber Composites, LLC, No. 11-CV-3304 (ERK)(LB), 2012 WL 1314114, at *9 (E.D.N.Y. Apr. 17, 2012).

*Weisblum* was consistent with the holdings of this State's Court of Appeals, which long ago "dispensed with the requirement of privity in this sort of case," where a remote purchaser seeks redress against a manufacturer for product defects which cause "injury, physical or pecuniary, resulting from misrepresentations." *Randy Knitwear, Inc. v. American Cyanamid Co.*,

13

11 N.Y. 2d 5 at 11, 13 (1962) (recognizing that in the age of mass media, "Manufacturers make extensive use of newspapers, periodicals and other media to call attention, in glowing terms, to the qualities and virtues of their products, and this advertising is directed at the ultimate consumer or at some manufacturer or supplier who is not in privity with them."); *Suarez v. Cal. Natural Living, Inc.,*. No. 17-cv-9847, 2019 WL 1046662, at *4 (S.D.N.Y. Mar. 5, 2019) (applying *Randy Knitwear* to express warranty claims due to defendant's "public advertising—namely, the products' labeling and the images of those labels allegedly displayed online.") *compare with* FAC ¶¶ 4-8 (describing, with images, the graphics and text appearing on the front, back and side panels of the Products); *Mahoney v. Endo Health Solutions, Inc.*, No. 15-cv-9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016) (applying Randy Knitwear and denying defendant's dismissal of plaintiff's express warranty claims based on defendant's statements that defendant's tablets contained a specific amount of fluoride); *Sitt v. Nature's Bounty, Inc.*, No. 15-cv-4199, 2016 WL 5372794, at *7 (E.D.N.Y. Sep. 26, 2016) (rejecting *Ebin* as against the weight of authority of case law in New York and finding that because "Plaintiff's claims are based on allegations related to Defendants' assertions in sales materials and advertisements," the express warranty claims should not be dismissed).

To the extent defendant argues that *Randy Knitwear* is no longer the law because it preceded New York's adoption of the UCC, this position is unsupported.  New York Uniform Commercial Code ("N.Y. U.C.C.") § 2-313(1)(a) ("Any affirmation of fact or promise *made by the seller to the buyer* which relates to the goods and becomes part of the basis of the bargain creates an express warranty") (emphasis added).

In fact, the commentary provides further support for *Randy Knitwear*, stating that "the warranty sections of this Article are not designed in any way to disturb those lines of case law

growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract." N.Y. U.C.C. § 2-313, cmt.2 (discussing express warranties).

Further, the UCC expanded the affected parties who could recover based upon a breach of express warranty if they are those who could "reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty." N.Y. U.C.C. § 2-318 ("Third Party Beneficiaries of Warranties Express or Implied."); see FAC 76 ("The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages." Here, plaintiff and consumers are the intended third-party beneficiaries of the express warranties, as they, not the retail stores, are the end-users.

Plaintiff should be allowed to marshal additional proof through discovery that they were in privity with defendant based upon her dealings with its agents and representatives at the retail level, and that defendant knew and accepted she was a third-party beneficiaries.

B.   Defendant's Claim of Lack of Pre-Suit Notice is Conclusory

Defendant contends, without even a citation to statutory authority, that the warranty claims should be dismissed for lack of pre-suit notice. Def. Motion at 18 *but see* N.Y. U.C.C. § 2-607 ("Notice of Breach"). Those claims should be sustained because (1) determination of whether notice was given is a question of fact not to be decided on a motion to dismiss, (2) defendant fails to offer proof in admissible form that plaintiff *did not* notify defendant, (3) actual notice in some form was provided to defendant by virtue of the many consumers informally complaining and seeking reimbursement – including through phone calls to defendant and social media interactions with its representatives – of the issues described here and (4) service of the Complaint and FAC, which themselves constituted notice.

15

1.   Whether Notice is Sufficient is a Question of Fact

In New York, whether and to what extent notice is sufficient is a question of fact not susceptible to resolution on a motion to dismiss. *Hubbard v. Gen. Motors Corp.*, No. 95-cv-4362, 1996 WL 274018, at *4-5 (S.D.N.Y. May 22, 1996). ("[T]he sufficiency and timeliness of the notice is generally a question for the jury.").

Defendant's failure to offer proof in admissible form that plaintiff did not comply with the notice provision is fatal to its argument.  In place of a properly sworn affidavit from defendant's mail clerk, describing the procedures and protocols related to directing mail and stating that their records indicate the absence of notice from plaintiff at or before the time the action was commenced, defendant proffers its attorney's conclusions.  However, because defendant's counsel does not have personal knowledge of whether defendant received pre-suit notice from plaintiff, the warranty claims must prevail at the pleading stage.

2.   Pre-Suit Notice Not Required

According to defendant, the warranty claims must be dismissed because plaintiff did not provide notice of the breach. See *Colella v. Atkins Nutritionals, Inc.*, 348 F.Supp.3d 120, 143 (E.D.N.Y. 2018) (dismissing breach of express warranty claim for lack of pre-suit notice); *Paulino v. Conopco, Inc.*, No. 14-cv-5145, 2015 WL 4895234, at *1 (E.D.N.Y. Aug. 17, 2015) ("New York law requires that a buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.") ; *Quinn v. Walgreen Co.*, 958 F.Supp.2d 533, 544 (S.D.N.Y. 2013) (same); *Singleton v. Fifth Generation, Inc.*, No. 15-cv-474, 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016) (dismissing breach of express warranty claim because plaintiff "failed to allege that he provided timely notice to Defendant of the alleged breach").

Defendant's argument fails to consider the line of New York Cases that create an exception to the notice requirement for retail customers. *Neri v. R.J. Reynolds Tobacco Co.*, No. 98-cv-371, 2000 WL 33911224, at *19 (N.D.N.Y. Sept.28, 2000); See also *Fischer v. Mead Johnson Labs.*, 41 A.D.2d 737, 737, 341 N.Y.S.2d 257 (1st Dep't. 1973) (overturning the Special Term and holding "the prescription of timely notice under the code provisions is to be applied, if at all, differently in commercial and retail sales situations."); *Silverstein v. R.H. Macy & Co.*, 266 A.D. 5, 9, 40 N.Y.S.2d 916 (1st Dep't. 1943) (finding that for the complaint to be sufficient, Plaintiff did not need a notice under section 130 of the Personal Property Law because the notice had no relation to goods for immediate human consumption. The Court further held that to require a complaint which indicates a notice of rejection or claim of damage within a reasonable time on account of defect of edible goods in a retail transaction, "would strain the rule beyond a breaking point of sense or proportion to its intended object."); *Kennedy v. F.W. Woolworth Co.*, 205 A.D. 648, 649, 200 N.Y.S. 121 (1st Dep't. 1923) (holding the similar provision of section 130 of Personal Property law, which was the predicate for section 2-607 of the UCC, was not applicable in situations involving goods sold for human consumption).

Even if the exception is inapplicable, Defendant had notice that a defect had manifested and had opportunity to cure by the time the FAC was filed, several months *after* the initial complaint. Therefore, Plaintiff's breach of express (and implied) warranty claim is properly pled and Defendant's Motion to Dismiss this claim should be denied.

**VIII.  PLAINTIFFS PLAUSIBLY ALLEGE DEFENDANT'S FRAUDULENT INTENT**

Defendant argues that Plaintiffs fails to plausibly allege common law fraud because she fails to allege specific facts that give rise to a "strong inference of fraudulent intent." Plaintiff satisfied the requirements of Fed. R. Civ. P. 8(a), and the heightened requirements of Fed. R. Civ.

P. 9(b) by adequately pleading the "who, what, when, where, and how of the alleged fraud, noted in the below table. *U.S. ex rel. Polansky v. Pfizer, Inc.*, No. 04-cv-0704, 2009 WL 1456582, at *4 (E.D.N.Y. May 22, 2009).

| Pleading | FAC Allegations | Paragraph |
|---|---|---|
| Who: | "BEF Foods, Inc. ("defendant") manufactures, distributes, markets, labels and sells refrigerated ready-to-eat mashed potatoes under the Bob Evans brand name ("Products")" | 1 |
| | "Defendant is an Ohio corporation with its principal place of business in New Albany, Ohio." | 150 |
| What: | "Products are promoting butter so the consumer will believe the flavor derives exclusively from butter, since natural flavor is only declared on the ingredient list in small print" | 114, 73 |
| | represented as "fresh" by the statements "Made with Fresh Potatoes," "Made with 100% Fresh Potatoes" and "farm-fresh goodness," though they are never actually claimed to be "fresh" | |
| When: | "any Products containing the actionable representations during the statutes of limitations." | 88 |
| Where: | "The common relevant front representations include…" | 4 |
| How: | "The definition of butter established by Congress does not permit "natural flavor" to be added to the food known as butter"; defendant is taking advantage of erroneous consumer beliefs which have shown that 80% of consumers erroneously believe refrigerated mashed potatoes are fresh. | 115, 74 |

Defendant's intent is evinced by its opportunity to commit fraud and their "conscious misbehavior or recklessness," in furthering the mistaken beliefs of its customers. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *Plumbers & Steamfitters Local 137 Pension Fund v. American Express Co.*, No. 15-cv-5999, 2017 WL 4403314, at *4 (S.D.N.Y. Sept. 30, 2017) ("Where the alleged conduct is an omission, "conscious recklessness" means defendants must have "acted with at least a reckless disregard of a known or obvious duty to disclose.").

18

However, Plaintiff's allegations do give rise to a strong inference that Defendant acted with either actual knowledge of its representations' falsity or with reckless disregard for their truth.  The failure to do so qualifies as reckless disregard for the truth, which satisfies the scienter requirement for fraud claims. See *Hughes v. Ester C Co.*, 930 F.Supp.2d 439, 473 (E.D.N.Y. 2013) ("Plaintiffs bolster this claim of alleged falsity awareness by pointing to an alleged lack of supporting scientific evidence for defendants' claims"); *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) ("Rule 9(b) permits scienter to be demonstrated by inference").

The FAC states that the statements that the Products are "made with fresh potatoes" constitute fraud because defendant should reasonable know, or was capable, upon even a cursory investigation, that "83% of consumers believe refrigerated potatoes are fresh," despite the Products being highly processed and laden with chemical preservatives. FAC, ¶ 76.

The unredacted and publicly – though inadvertently disclosed – "2014 Simply Potatoes Digital Brochure" was prepared by defendant's affiliate and parent company, Michael Foods Group, Inc. It strains belief that defendant would not have either discovered the document independently or had it provided to them by Michael Foods executives.  Should defendant claim that defendant and Michael Foods only recently became part of the same corporate organization, this argument fails.  First, it is plausible that though the two companies may have recently merged, they were in discussions for several years prior to the formalities of merger being completed.  Second, due to the high levels of concentration in the refrigerated mashed potatoes sector, the sharing of information amongst high level employees is not unexpected.

The materials were directed *not* to consumers, but to food service providers, and stated: "fresh matters. 93% of consumers rate freshness of food as important to selecting a restaurant.* 83% of consumers *believe* refrigerated potatoes *are fresh*.*" (emphasis added). These erroneous

beliefs exist despite the extended shelf-life of refrigerated mashed potatoes due to use of artificial preservatives.

The result is what defendant intended – consumers believe the mashed potatoes are "fresh," as in "just prepared." This document shows defendant was, or should have been, well-informed that the consuming public mistakenly *believes* refrigerated potato products to be "fresh," understood as not subjected to a processing or preservation step after it first became consumable. Yet despite this knowledge, defendant heavily relies upon the term "Fresh" ("Made from Fresh Potatoes"), never going so far as to deem the Products "fresh," but far enough so that consumers will persist in believing something which is not true. FAC, ¶¶ 79-80.

The FAC has met the "specificity requirement for scienter" imposed by Fed. R. Civ. P. 9(b) since plaintiffs have not only "averred generally" as to defendant's knowledge. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

## IX.    NATIONWIDE AND NON-NEW YORK STATE CLAIMS ARE SUFFICIENT AT PLEADING STAGE

Defendant's argument with respect to the nationwide class are conclusory, overbroad and premature. First, defendant's authorities do not stand for the proposition that a court must or even should decide issues relating to maintenance of a nationwide class at the pleading stage. *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-md-2413, 2013 WL 4647512, at *57 (E.D.N.Y. Aug. 29, 2013) ("courts have recognized that this question is usually addressed on a class certification motion") (emphasis added).

Relevant authorities within the Second Circuit have held that where are "common issues of conduct that would establish liability under a number of states' laws, it is possible for those common issues to predominate and for class certification to be an appropriate mechanism for handling the dispute." *Greene v. Gerber Products Co.*, 262 F.Supp.3d 38, 80 (E.D.N.Y. 2017).

Though defendant asserts the respective consumer protection laws of New York are not applicable to purchasers outside of those states, it provides no authority as to any differences between the consumer protection laws of other states with these two. *Greene*, 262 F.Supp.3d at 80 ("To the extent that the laws of various states differ, those concerns may be "lessened where the states' laws do not vary materially."").

According to defendant, "All of Plaintiff's class allegations, except for those alleging a New York class, therefore should be dismissed." ECF 13-1 at 19. This sweeping conclusion is purportedly based on *Allen v. Conagra Foods, Inc.*, where the court supposedly dismissed non-California claims due to "state-to-state differences in elements such as individualized causation and reliance and methods of computing damages." ECF 13-1 at 19 citing *Allen v. Conagra Foods, Inc.*, No. 13-cv-01269, 2019 U.S. Dist. LEXIS 122807 at *17 (N.D. Cal. Jul. 22, 2019).

However, the decision presented by defendant was made at the certification stage, since its decision on defendant's motion to dismiss specifically deferred ruling. *Allen v. Conagra Foods, Inc.*, No. 13-cv-01269, 2018 WL 6460451 at *20 (N.D. Cal. Dec. 10, 2018) ("there is no benefit to be had in addressing this question [of the nationwide class]" at the pleading stage.").

In *Allen*, District Judge Orrick rejected the argument urged by defendant here – that plaintiffs "plead[s] all necessary elements under all state statutes." 2018 WL 6460451 at *20 citing *Johnson v. Nissan N. Am., Inc.*, 272 F.Supp.3d 1168, 1175 (N.D. Cal. 2017) (requiring plaintiffs present class representatives who were harmed by defendant's conduct).

While the certification order in *Allen* did refuse to certify classes based on consumers in "Alabama, Georgia, Mississippi, Montana, Ohio, and Virginia," this is not relevant. ECF 13-1 at 19. The FAC does not contain representative plaintiffs for any of these states other than Virginia, where the proposed class representative also seeks to represent a North Carolina class.

21

The FAC identifies individual representatives from numerous states and they have asserted claims under their state consumer protection laws.  Defendant has not identified which of these state's laws are different than New York, which it bears the burden of doing.

    A.    <u>Pleading Stage Does Not Require Plaintiffs to Allege Specific Statutes Violated Nor their Elements</u>

According to defendant, the FAC "identifies named plaintiffs from the states of Maryland, Virginia, and North Carolina, but does not identify any law of these states that BEF Foods is alleged to have violated. FAC ¶¶ 138, 144, 145, 163." ECF No. 13-1 at 14.  The result, defendant asserts, should be dismissal of those claims. Defendant's conclusion is incorrect for multiple reasons.

First, while defendant may be correct in stating that the list of statutes cited in the FAC do not include Maryland, North Carolina and Virginia, the omission of these states' statutes was clearly a scrivener's error.  ECF No. 13-1 at 14 ("No laws from these states are cited in Plaintiff's list of state statutes that BEF Foods is alleged to have violated.").  A "scrivener's error" is typically defined in the context of an agreement "[W]here there is no mistake about the agreement and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected." *Harris v. Uhlendorf*, 24 N.Y.2d 463, 467 (1969).

Though the present context is a pleading, the principle is identical, because there "is no mistake" that the FAC sought to assert claims for "consumers in all 50 states with sub-classes for the individual states."  FAC ¶ 154; ¶ 163 ("Named Plaintiffs and Jane Doe Plaintiffs assert causes of action under the consumer protection statutes of the all 50 states").

Given the FAC identified the consumer protection statutes of forty-one (41) states, including states where a plaintiff has not yet been identified by name, it is clear the omission of

the states identified by defendant was a scrivener's error, which the Court should allow plaintiff to correct.

At the pleading stage, where the allegations of the FAC are required to be given a "liberal instruction," defendant's argument – that plaintiffs did not "identify the specific 'law, rule or regulation' violated" is at odds with the longstanding pleading requirements recently reaffirmed by the Court of Appeals. *Webb-Weber v. Community, Inc.*, 23 N.Y.3d 448, 452, (2014) (reversing Appellate Division dismissal of claims where plaintiff did not cite the specific statute violated by defendant).

The Court of Appeals emphasized that what matters is whether the "substantive allegations," when applied to factual matter, are sufficient to provide defendant with notice of the offending conduct. *Webb-Weber v. Community, Inc.*, 23 N.Y.3d 448 at 454 (2014) ("for pleading purposes, the complaint need not specify the actual law, rule or regulation violated, although it must identify the particular activities, policies or practices in which the employer allegedly engaged").

The FAC more than adequately provides defendant with notice of its misleading practices, of which only a partial example is provided below.

| Paragraph | Conclusion | Support |
|---|---|---|
| 61 | "The Products are misleading because consumers do not expect to receive butter and vegetable oils in a mashed potatoes product." ¶ 61 | • Consumer preferences for butter instead of synthetic vegetable oil alternatives<br>• Label claims only promoting butter<br>• Farm imagery<br>**¶¶ 10-60** |
| 70 | "the amount of butter represented by the pat, is false, deceptive, misleading and not true"<br>¶ 70 | • Quantitative representation of amount of butter with "pat"<br>• Products lack any Vitamin A<br>• ¶67-70 |
| 71 | The Products make extensive use of the term "fresh" and "real" in a misleading and deceptive manner. | • "Fresh" is used in a way to suggest or imply the food is unprocessed in its raw state |

23

¶ 71

- For mashed potatoes, a reasonable consumer understands "fresh" to mean they were "just prepared." ¶ 71-83

### B. The Court Need Not Dismiss the Claims of Prospective Plaintiffs from States where Consumer Protection Laws are Not Listed

For the same reasons related to the inadvertent omission of certain consumer protection statutes of various states, defendant's argument for dismissal of any claims from consumers of those states should be denied on the same basis. Where it is unambiguous that a party intended for a writing to contain certain terms, such as all 50 consumer protection statutes, "such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected." *Nash v. Kornblum*, 12 N.Y.2d 42, 47 (1962) quoting *Born v. Schrenkeisen*, 110 N.Y. 55, 59 (1888).

Here, the Court should grant plaintiffs leave to correct the omission of the states where their consumer protection laws were not included in the FAC's list.

## X. PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF

Plaintiffs and reasonable consumers seek to be relieved from Defendant's continuing misleading and deceptive practices in the future, which is no more truthful today than when plaintiff first discovered the alleged deception.

Defendant argues that Plaintiff lacks standing to pursue injunctive relief because there is no indication that she intends to purchase any of the Products again, and is therefore unlikely to suffer any future injury. ECF 13-1, pp. 26-27.

However, this argument ignores that "an injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf." *Belfiore v. Procter & Gamble Co.*, F.Supp.3d 440, 445 (E.D.N.Y. 2014).

To hold otherwise "denigrate[s] the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated." Id. See *Delgado v. Ocwen Loan Servicing Company, LLC*, No. 13-cv-4427, 2014 U.S. Dist. LEXIS 135758, 2014 WL 4773991, at *42 (E.D.N.Y. Sept. 23, 2014) (concluding that plaintiffs who became aware of deceptive practice lack standing to seek injunctive relief would "eviscerate the intent of the California legislature in creating consumer protection statutes."); *Ackerman v. Coca-Cola Co.*, No. 09-cv-395, 2013 WL 7044866, at *15 n. 23 (E.D.N.Y. July 18, 2013) (foreclosing injunctive relief based on awareness of deceptive practice, evinced by the legal action in which a plaintiff is seeking this relief, would "'effectively bar any consumer who avoids the offending product from seeking injunctive relief.'") (quoting *Koehler v. Litehouse, Inc.*, 2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012)).

## XI.   CONCLUSION

Though "a party may amend its pleading only with the opposing party's written consent or the court's leave" after the expiration of time for amendment as a matter of course, the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[T]he 'permissive standard' of Rule 15 'is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015). Plaintiffs have not had an opportunity to amend their pleading in response to a Court order evaluating the sufficiency of his allegations. As the Second Circuit observed, "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley*, 797 F.3d at 190.

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety

or in the alternative, grant leave to amend or dismiss without prejudice.

Dated:    September 13, 2019

<div style="margin-left: auto; width: 50%;">

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

</div>

1:18-cv-06409-ARR-RLM
United States District Court
Eastern District of New York

Boubacar Sarr, individually and on behalf of all others similarly situated,

        Plaintiffs,

   - against -

BEF Foods, Inc.

        Defendant

---

Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss the     First
Amended Complaint

---

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
  Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

---

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  September 13, 2019

                       /s/ Spencer Sheehan
                      Spencer Sheehan