UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Boubacar Sarr, individually and on behalf of all others similarly situated, *et al.*,<br><br>                      Plaintiffs,<br><br>— against —<br><br>BEF Foods, Inc.,<br><br>                      Defendant. | **18-cv-6409 (ARR) (RLM)**<br><br><br>**Not for print or electronic publication**<br><br><br>**Opinion & Order** |

ROSS, United States District Judge:

The plaintiffs, Boubacar Sarr and several other individuals, bring a putative class action against the defendant, BEF Foods, Inc.—a manufacturer of refrigerated, ready-to-eat mashed potatoes. In the plaintiffs' First Amended Complaint, they allege that BEF represents its mashed potatoes as containing "real" butter and "fresh" potatoes, when in fact they also contain vegetable oils and preservatives. Accordingly, the plaintiffs assert various statutory and common law claims against BEF for misrepresenting their products. BEF moves to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, I grant the defendant's motion, and the First Amended Complaint is dismissed.

## BACKGROUND

The plaintiffs allege that defendant BEF Foods, Inc. manufactures, distributes, markets, labels, and sells "Bob Evans" brand mashed potatoes (the "Mashed Potatoes"). First Am. Compl. ¶ 1, ECF No. 10 ("FAC"). BEF produces the Mashed Potatoes in several varieties, ranging from "Original," to "Sour Cream & Chives," to "Loaded," which contains a "mix of cheeses with bacon[.]" *Id.* ¶ 3. It distributes these Mashed Potatoes for sale—online and in stores and

restaurants—as refrigerated, ready-to-eat products. *Id.* ¶¶ 1–2. The Mashed Potatoes' packaging contains several statements, including, on the packaging for the Original product, "Made with Real Potatoes, Milk & Butter." *Id.* ¶ 4. Each variety's packaging also says "farm-fresh goodness" toward the top, directly below the Bob Evans logo. *Id.* The packaging for the Original variety depicts an image of the Mashed Potatoes in a bowl, topped with a pat of melting butter and labeled "Serving Suggestion[.]" *Id.* ¶¶ 6–7. The backs of some of the varieties' packaging state "Made with Real Milk & Butter" and either "Made with Fresh Potatoes" or "Made with 100% Fresh Potatoes[.]" *Id.* ¶ 5. The Mashed Potatoes' back packaging also states the products' nutrition facts and ingredients. ¶ 8. Thus, the front packaging for the Original product appears as follows:



*Id.* ¶ 4.

The back packaging for the Original product appears as follows:



*Id.* ¶¶ 5, 8.

BEF's website displays the following:



*Id.* ¶ 16.

While BEF emphasizes its use of real butter in making the Mashed Potatoes—by stating

"Made with Real . . . Butter" on the products' front and back labels—the ingredient panel reveals that the Mashed Potatoes also contain "soybean and/or canola oil[.]" *Id.* ¶¶ 8–9. The plaintiffs contend that typical mashed potatoes contain either butter or vegetable oil, but not both. *See id.* ¶¶ 17, 116–19. Indeed, a historic "rivalry" between butter and vegetable oil "is unlike any other which has existed," with consumers preferring butter. *Id.* ¶¶ 20, 23, 44, 50. But, when consumers purchase BEF's Mashed Potatoes, "they get both despite believing they will only be having butter." *Id.* ¶ 21. Therefore, BEF's representations about its Mashed Potatoes "are misleading because consumers do not expect to receive butter and vegetable oils in a mashed potatoes product." *Id.* ¶ 61.

In addition, BEF describes the potatoes in its Mashed Potatoes as "fresh" and its brand as representing "farm-fresh goodness," when the Mashed Potatoes themselves are not a "fresh" product. *Id.* ¶¶ 4–5, 73, 82–83. The word "fresh," as the Food and Drug Administration ("FDA") defines it and BEF uses it, "implies that the food is unprocessed" and "means that the food is in its raw state and has not been frozen or subjected to any form of thermal processing or any other form of preservation[.]" 21 C.F.R. § 101.95(a); *see* FAC ¶ 72. However, according to the plaintiffs, consumers believe that "fresh" means "just prepared." FAC ¶ 80. A 2014 brochure directed at food service providers stated that "fresh matters. 93% of consumers rate freshness of food as important to selecting a restaurant.[ ] 83% of consumers believe refrigerated potatoes are fresh.[]" *Id.* ¶¶ 75–76. The Mashed Potatoes cannot be "fresh"—as consumers understand the term—because they have a "[three]-month shelf life . . . due to artificial chemical preservatives . . . ." *Id.* ¶ 83. Thus, by invoking the word "fresh" on its packaging, BEF misleads consumers, taking advantage of the eighty percent of them who "erroneously believe refrigerated mashed potatoes are fresh." *Id.* ¶ 74. The word "[r]eal" is similarly misleading because BEF uses it, and consumers understand it,

"synonymously with [']fresh['.]" *Id.* ¶¶ 87, 92–93.

The plaintiffs also allege that the Mashed Potatoes contain less butter than BEF advertises them as containing. *Id.* ¶¶ 67–70. The plaintiffs reason as follows: the packaging for the Original product depicts a pat of melting butter atop a serving of Mashed Potatoes, *id.* ¶ 67, a standard pat of butter equals half a tablespoon of butter, *id.* ¶ 68, and half a tablespoon of butter contains an average of 3.5% of consumers' daily value of Vitamin A, *id.* ¶ 69, but the Mashed Potatoes contain 0% of consumers' daily value of Vitamin A, *id.* ¶ 70; thus, a serving of the Mashed Potatoes cannot possibly contain one pat of butter, and the image depicting them with a pat of butter on top is misleading, *id.* Still, the plaintiffs acknowledge that the Mashed Potatoes contain more butter than vegetable oil. *See id.* ¶¶ 96, 103–04.

The plaintiffs next allege that in prior years, BEF labeled prior iterations of its Mashed Potatoes as containing butter and margarine, *id.* ¶ 99, "Dairy Blend[,]" *id.* ¶ 100, and "Butter Blend[,]" *id.* ¶ 101. "In most instances where an end-user producer will require an ingredient that consists of butter and vegetable oils, they will purchase a 'blend' to add directly[.]" *Id.* ¶ 105. Thus, the plaintiffs contend, BEF must have received a blended product from its supplier and "listed the components of the compound ingredient in the correct way on the ingredient list, but only promoted part of that compound industrial ingredient on the front labels[.]" *Id.* ¶ 106.

Finally, the Mashed Potatoes contain "natural flavor" as an ingredient. *Id.* ¶ 110. While unclear, the plaintiffs seem to be alleging that the natural flavor derives from or is part of a margarine ingredient. *See id.* ¶ 111. *But see id.* at ¶¶ 110–11 ("VIII. 'Natural Flavor' in Products is Likely Butter Flavor"). Although the FDA does not require that BEF include this natural flavor in the name of the food, *see id.* ¶¶ 112–13, the plaintiffs contend that it is nonetheless misleading for BEF to promote its use of butter and not its use of natural flavor because consumers believe

that the Mashed Potatoes' "flavor derives exclusively from butter" when, in fact, it does not. *Id.* ¶¶ 113–14.

The plaintiffs "seek to represent a national class and state sub-classes of consumers in the states where they reside and purchased the products[.]" *Id.* ¶ 133. Twelve named plaintiffs purchased the Mashed Potatoes in twelve different counties across eleven different states; in particular, plaintiff Sarr purchased the Mashed Potatoes in Kings County, New York. *See id.* ¶¶ 133–47. In addition, the plaintiffs assert that there exist thirty-nine "Jane Doe plaintiffs" who "are citizens of the 39 states for which the identity of a named plaintiff has not been disclosed, but who were affected in the same manner as the Named Plaintiffs." *Id.* ¶ 148. The named plaintiffs from the eleven listed states, including the named plaintiffs from New York, "will represent the state sub-class[es] of persons who purchased any Products containing the actionable representations during the statutes of limitations." *Id.* ¶ 155.

The plaintiffs assert causes of action: (1) under each of the fifty state's consumer protection statutes, including §§ 349 and 350 of the New York General Business Law, *see* N.Y. Gen. Bus. Law §§ 349–50 (McKinney) ("NYGBL"); FAC ¶¶ 163–71; (2) for negligent misrepresentation, FAC ¶¶ 172–79; (3) for breach of express warranty and breach of the implied warranty of merchantability, as well as a violation of the Magnuson Moss Warranty Act, *see* 15 U.S.C. §§ 2301–2312; FAC ¶¶ 180–91; (4) for fraud, FAC ¶¶ 192–97; and (5) for unjust enrichment, *id.* ¶¶ 198–99. The plaintiffs do not address under which state's common law their common law claims arise. They seek both injunctive relief and damages. *Id.* at 33 ¶¶ 2–4. They claim that "[a]s a result of the false and misleading labeling, the [Mashed Potatoes] are sold at premium prices[.]" *Id.* ¶ 126. They also claim that they "would consider purchasing the [Mashed Potatoes] again if there were assurances that the [Mashed Potatoes'] representations were no longer misleading." *Id.* ¶ 153.

BEF has moved to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), "on the grounds that the First Amended Complaint fails to state a claim upon which relief can be granted, and that the plaintiffs lack standing [for injunctive relief]." Def.'s Mot. to Dismiss 1, ECF No. 13; Def.'s Mem. of Law in Supp. of Mot. to Dismiss 19–20, ECF No. 13-1 ("Def.'s Br."). The plaintiffs oppose.

## DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss, the court must "accept[] all factual allegations in the complaint as true" and "draw[] all reasonable inferences in the plaintiff[s'] favor." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). Nonetheless, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In particular, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Further, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 476 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). To determine whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

I. **The plaintiffs fail to state a claim under New York's consumer protection statute because BEF's alleged representations are not likely to mislead reasonable consumers.**

As a preliminary matter, the plaintiffs assert causes of action under every state's consumer protection statute, but BEF cites only to New York's statute in moving to dismiss. *See* Def.'s Br.

4. I will address the New York statute here and the other states' statutes below in Section VII, along with my discussion of the non-New York plaintiffs' claims generally.

Under § 349 of the NYGBL, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful." NYGBL § 349(a). Under § 350, "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is . . . unlawful." *Id.* ¶ 350. To state a claim under § 349 or § 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012)). In this case, the parties dispute whether the plaintiffs have stated a claim with respect to the second element: that the defendant must have engaged in materially misleading conduct. To be "misleading" under § 349 or § 350, the defendant's conduct must have been "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* (quoting *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007)). To state a claim, "plaintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.'" *Jessani v. Monini N. Am., Inc.*, No. 17-2504-cv, 2018 WL 6287994, at *1 (2d Cir. Dec. 3, 2018) (summary order) (quoting *Ebner v. Fresh Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). Instead, they must "plausibly allege 'that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Ebner*, 838 F.3d at 965); *see also Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 211 (E.D.N.Y. 2016) ("The term 'likely' indicates that deception must be probable, not just possible."). This standard is an objective one. *See Cohen*, 498 F.3d at 126. Further, "[i]t is well settled that a court may determine as a matter of law that an allegedly

deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (per curiam).

In addition, "[i]n determining whether a reasonable consumer would be misled . . . the [c]ourt must consider 'the entire context of the [package].'" *Fermin*, 215 F. Supp. 3d at 211 (quoting *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 WL 5372794, at *8 (E.D.N.Y. Sept. 26, 2016)). The Second Circuit Court of Appeals has held that a court cannot expect "a reasonable consumer . . . to consult the Nutrition Facts panel on the side of [a] box to correct misleading information set forth in large bold type on the front of the box." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018). Still, a court in this district subsequently reasoned that "[i]f a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous. If so, the clarification can defeat the claim." *Reyes v. Crystal Farms Refrigerated Distribution Co.*, No. 18-CV-2250 (NGG) (RML), 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019) (quoting *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018)).

BEF's emphasis of the Mashed Potatoes' "Real . . . Butter" content is not likely to mislead a reasonable consumer. First, the Mashed Potatoes do, in fact, contain real butter. *See Reyes*, 2019 WL 3409883, at *3 (concluding on 12(b)(6) motion that statement "made with real butter" did not violate § 349 or § 350 when mashed potatoes contained butter); FAC ¶¶ 8–9. Second, it is not plausible that a reasonable consumer would likely interpret the "real butter" representation to imply that the Mashed Potatoes did not also contain additional fats. *See Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 341 (E.D.N.Y. 2018) (concluding on 12(b)(6) motion that "cold-pressed" label on juice bottle could not plausibly lead reasonable consumer to assume juice had not also undergone additional processes). Certainly, "a significant portion of the general

consuming public . . . acting reasonably" would not arrive at such an interpretation. *Jessani*, 2018 WL 6287994, at *1.

*Mantikas*—where the Second Circuit held that plaintiffs stated a claim under the New York statute—is distinguishable. *See* 910 F.3d at 634. *Mantikas* dealt with "Cheez-It" crackers labeled "made with whole grain" on the front of the box, when, in fact, the crackers' "grain content was not predominantly whole grain, but rather enriched white flour." *Id.* at 635. The court reasoned that the "made with whole grain" representation "would . . . plausibly lead a reasonable consumer to conclude that the grain ingredient was entirely, or at least predominantly, whole grain." *Id.* at 638. Here, unlike in *Mantikas*, the plaintiffs concede that the Mashed Potatoes' predominant fat ingredient is the one emphasized in the defendant's labeling—butter. *See Reyes*, 2019 WL 3409883, at *4 (distinguishing Cheez-Its in *Mantikas* from mashed potatoes that contained more butter than margarine); FAC ¶¶ 96, 103–04.[1]

---

[1] The plaintiffs cite *Berger v. MFI Holding Corp.*, where a court in this district, by telephonic order, found that a plaintiff plausibly alleged §§ 349 and 350 claims based on a theory similar to the plaintiffs' here—that emphasizing "real butter" on a mashed potato product's label implied that the product did not contain margarine. Tr. 4:4–12, 10:19–11:10, *Berger v. MFI Holding Corp.*, No. 2:17-cv-6728 (E.D.N.Y. Mar. 28, 2019), ECF No. 35 ("*Berger* Tr."); *see* Pls.' Mem. of Law in Opp. to Mot. to Dismiss 5–6, ECF No. 14 ("Pls.' Br."). First, in *Berger*, unlike here, the plaintiff alleged that the mashed potatoes' packaging included the words "simply[,]" "simple[,]" and "simplest[,]" although it is not clear in what context or to what extent the court's analysis depended on the presence of those words. *Berger* Tr. 4:23–25, 11:15–20. Second, unlike the *Berger* court, I find that *Mantikas* is distinguishable and does not dictate that I deny the motion to dismiss. *See id.* at 12:1–13:3. In particular, the *Berger* court highlighted *Mantikas*'s rejection of the proposed rule that "as a matter of law, it is not misleading to state that a product is made with a specified ingredient if that ingredient is in fact present[.]" 910 F.3d at 638; *see Berger* Tr. 12:12–13:3. *Mantikas* did conclude that "[s]uch a rule would validate highly deceptive marketing" by permitting the Cheez-It manufacturer "to lead consumers to believe its Cheez-Its were made of whole grain so long as the crackers contained an iota of whole grain, along with 99.999% white flour." 910 F.3d at 638. But I need not adopt the rule that *Mantikas* forbade in order to find for BEF here. While I cannot say that it is *never* misleading to emphasize that a product is "made with" a certain ingredient as long as that ingredient is present in any quantity, I can say that it was not misleading for BEF to do so in this case, where the emphasized ingredient was the predominant one.

In addition, the Mashed Potatoes' ingredient list discloses that the product contains vegetable oils. *See Reyes*, 2019 WL 3409883, at *3 ("To the extent that including a label on a mashed-potatoes package indicating that the product is 'made with real butter' may create confusion as to whether the mashed potatoes also contain margarine, such confusion is sufficiently dispelled by the ingredients label on the back of the package[.]"); FAC ¶¶ 8–9. It is true that *Mantikas* held that a reasonable consumer need not consult a product's Nutrition Facts panel "to correct misleading information set forth in large bold type on the front of the box." 910 F.3d at 637. However, the ingredient list here does not correct any misleading information; rather, it confirms that the Mashed Potatoes contain predominantly butter, as opposed to vegetable oil. Considering the context of the entire package, *see Fermin*, 215 F. Supp. 3d at 211, the Mashed Potatoes' "real butter" representations would not mislead a reasonable consumer.

I also find that the plaintiffs have failed to state a claim with respect to BEF's use of the word "fresh." No reasonable consumer would conclude that the phrases "Made with Fresh Potatoes" and "Made with 100% Fresh Potatoes," FAC ¶¶ 5, 73, imply that the finished Mashed Potatoes product itself was "just prepared" or lacking preservatives, *id.* ¶¶ 80, 83. BEF's representations unambiguously mean that the potatoes used as an ingredient in the Mashed Potatoes were fresh when so incorporated. *See* Def.'s Br. 8. And BEF's use of the phrase "farm-fresh goodness" is not misleading in context. This phrase appears toward the top of the Mashed Potatoes' package, directly beneath the "Bob Evans" brand name. FAC ¶ 4. It reads as a slogan of the Bob Evans brand in general, rather than as a representation that this particular Mashed Potatoes product is fresh. Further, no reasonable consumer would read the phrase "farm-fresh goodness" and believe that the Mashed Potatoes arrived freshly from a farm; mashed potatoes is a cooked dish and obviously requires some amount of processing between the cultivation of its ingredients

on a farm and its arrival on the dinner table. That brand-name packaging encases the Mashed Potatoes also signals that processing has occurred. The phrase "farm-fresh goodness" is, therefore, not likely to mislead a reasonable consumer to believe that the Mashed Potatoes "ha[d] not been . . . subjected to any form of thermal processing or any other form of preservation[.]" 21 C.F.R. § 101.95(a); *see* Pls.' Br. 8 (conceding that § 101.95 "sets forth parameters for the use of 'fresh' on food labels."). Thus, the plaintiffs have failed to state a claim under New York's consumer protection statute.

## II. The plaintiffs fail to state a claim for negligent misrepresentation because they do not allege a special or privity-like relationship with BEF.

Here, too—and with respect to all of the plaintiffs' common law claims—the parties seem to assume that New York law governs. *See* Def.'s Br. 15–19; Pls.' Br. 12–20. I note that "[a] federal district court 'sitting in diversity must generally apply the choice of law rules of the state in which it sits.'" *Solak v. Hain Celestial Grp., Inc.*, No. 3:17-CV-0704 (LEK/DEP), 2018 WL 1870474, at *10 (N.D.N.Y. Apr. 17, 2018) (quoting *In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012)). The parties have not provided any briefing on whether New York's choice of law rules dictate that New York law governs the common law claims in this case, particularly when many of the named plaintiffs reside and purchased the Mashed Potatoes in other states. *See* FAC ¶¶ 133–47. Nonetheless, because I conclude that the plaintiffs have failed to state a claim under New York law, I dismiss the plaintiffs' common law claims; to the extent that the plaintiffs assert claims under the law of any state other than New York, my dismissal is without prejudice, as discussed more fully below in Section VII.

Under New York law, "[a] claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and

(3) reasonable reliance on the information[.]" *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011) (quoting *J.A.O. Acquisition Corp. v. Stavitsky*, 863 N.E.2d 585, 587 (N.Y. 2007)). With respect to the first element, a special relationship exists if the defendant "possess[es] unique or specialized expertise" or is "in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Id.* (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (N.Y. 1996)). A relationship "so close as to approach that of privity" exists when

> 1) the defendant makes a statement with the awareness that the statement was to be used for a particular purpose; 2) a known party or parties rely on this statement in furtherance of that purpose; and 3) there is some conduct by the defendant linking it to the party or parties and evincing defendant's understanding of their reliance.

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 584 (2d Cir. 2005) (per curiam) (citing *Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*, 539 N.E.2d 91, 95 (N.Y. 1989)) (summarily affirming and quoting district court's opinion in full). But "where the statement at issue is directed at a 'faceless o[r] unresolved class or persons,' no duty of care arises." *Id.* (citing *White v. Guarente*, 372 N.E.2d 315, 318 (N.Y. 1977)). Plaintiffs may also plead "actual privity of contract[.]" *Tyman v. Pfizer, Inc.*, No. 16-CV-06941 (LTS) (BCM), 2017 WL 6988936, at *14 (S.D.N.Y. Dec. 27, 2017) (quoting *Parrott v. Coopers & Lybrand, L.L.P.*, 741 N.E.2d 506, 508 (N.Y. 2000)).[2]

---

[2] The Second Circuit has also concluded that absent a duty of confidence and trust—or when plaintiffs merely "sparsely [plead]" such a duty—plaintiffs must "emphatically allege[]" that the defendant "held or appeared to hold unique or special expertise" and that "the [defendant] was aware of the use to which the information would be put and supplied it for that purpose" for their claim to survive. *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004) (quoting *Kimmell*, 89 N.Y.2d at 264). This rule largely restates the elements set forth above. To the extent that it differs, I find any difference immaterial, as the plaintiffs have satisfied none of these elements.

Here, the plaintiffs have not alleged a special relationship. The sole factual allegation that could support a finding that BEF stood "in a special position of confidence and trust" with respect to the plaintiffs, *Mandarin Trading*, 944 N.E.2d at 1109, is the plaintiffs' assertion that BEF is "a . . . trusted brand who has made homestyle fare for Americans for decades[,]" FAC ¶ 176. BEF's status as a trusted brand, however, does not give rise to a duty to impart correct information, as the plaintiffs comprise a "a 'faceless o[r] unresolved class'" of consumers. *Aetna Cas. & Sur. Co.*, 404 F.3d at 584; *see also Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 51, 75–76 (E.D.N.Y. 2017) (finding that consumer plaintiffs did not allege special relationship when they were "faceless or unresolved class or persons"). As to the element requiring that BEF have "unique or specialized expertise," *Mandarin Trading*, 944 N.E.2d at 1109, the plaintiffs do allege that BEF "held itself out as having special knowledge in the production, service and/or sale of the product[.]" FAC ¶ 176. However, the bases for the plaintiffs' claims—that the Mashed Potatoes contained vegetable oil and preservatives—were public information, plainly available on the Mashed Potatoes' ingredient label. And the 2014 industry brochure highlighting that 83% of consumers believed refrigerated potatoes were "fresh" does not rise to the level of unique or specialized expertise. *Cf. Greene*, 262 F. Supp. 3d at 76 (finding plaintiffs sufficiently alleged that defendant had unique expertise when defendant uniquely knew FDA had rejected its health claim and had also sponsored study that conclusively refuted its own health claim). Presumably, consumers themselves are in a position to know what their own beliefs are.[3]

---

[3] In addition, the page of the 2014 brochure from which the plaintiffs quote, and to which they provide a hyperlink, in their FAC appears to be addressed to the restaurant trade and does not refer to mashed potatoes in particular; in fact, it contains an image of diced potatoes. *See* FAC ¶ 75; Michael Foods, *Simply Potatoes* 2, https://www.simplypotatoessolutions.com/files/3113/9845/8048/2014SimplyPotatoesDigitalBrochurePOT100.pdf; Def.'s Reply Mem. of Law 9–10, ECF No. 15; *see also Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (internal citations omitted) (quoting *Chambers v. Time Warner, Inc.*, 282

Nor have the plaintiffs alleged a privity-like relationship. First, they have not alleged actual privity. *See Prue v. Fiber Composites, LLC*, No. 11–CV–3304 (ERK)(LB), 2012 WL 1314114, at *11 (E.D.N.Y. Apr. 17, 2012) (finding no privity absent direct buyer-seller relationship between plaintiffs and defendant). Second, the plaintiffs have not alleged a relationship "so close as to approach that of privity[.]" *Aetna Cas. & Sur. Co.*, 404 F.3d at 584. The 2014 brochure is not a plausible basis to claim that BEF labeled its Mashed Potatoes "with the awareness that [its] statement[s] [were] to be used for a particular purpose[.]" *Id.* In addition, the plaintiffs are not "known . . . parties" who relied on BEF's statements. *Id.* Again, "where the statement[s] at issue [are] directed at a 'faceless o[r] unresolved class or persons,'" a privity-like relationship does not exist. *Id.*

Finally, I note that Federal Rule of Civil Procedure 9(b) "may or may not apply to a state law claim for negligent misrepresentation." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004); *see* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). *But see Aetna Cas. & Sur. Co.*, 404 F.3d at 568, 583 (summarily affirming and then quoting in full from district court opinion that required negligent misrepresentation allegations to satisfy Rule 9(b)). Because I find that the plaintiffs have not plausibly alleged the requisite elements of negligent misrepresentation under any standard, and BEF has not raised an argument based on Rule 9(b) with respect to this claim, I do not reach the issue. The plaintiffs fail to state a claim for negligent misrepresentation.

### III. The plaintiffs fail to state a claim for breach of warranty.

---

F.3d 147, 153 (2d Cir. 2002)) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint.").

A. *The plaintiffs fail to state a claim for breach of express warranty because BEF's express representations were accurate and general.*

Under New York law,

> [t]o state a claim for breach of express warranty . . . a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach.

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014); *see also Avola v. Louisiana-Pacific Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013) (stating the same elements). "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." *Goldemberg*, 8 F. Supp. 3d at 482 (quoting *Avola*, 991 F. Supp. 2d at 391). "However, a representation on a product label does not create an express warranty if it 'is of such a general nature that a reasonable consumer would not rely on it as a statement of fact regarding' the product." *Atik v. Welch Foods, Inc.*, No. 15-CV-5405 (MKB) (VMS), 2016 WL 5678474, at *12 (E.D.N.Y. Sept. 30, 2016) (quoting *Simmons v. Washing Equip. Techs.*, 912 N.Y.S.2d 360, 361 (N.Y. App. Div. 2010)). A "breach of an express warranty" occurs when the express warranty was "false or misleading when made[.]" *In re Vivendi Universal, S.A.*, Nos. 02 Civ. 5571(RJH), 03 Civ. 2175(RJH), 2004 WL 876050, at *10 (S.D.N.Y. Apr. 22, 2004) (citing *Rogath v. Siebenmann*, 129 F.3d 261, 264 (2d Cir. 1997)); *see Avola*, 991 F. Supp. 2d at 392 n.9.

As discussed above in Section I, BEF's express representations were not false or misleading. BEF expressly stated that its Mashed Potatoes contained real butter. This statement was true. BEF did not expressly warrant that the Mashed Potatoes did not contain vegetable oil. BEF also expressly stated that it made its Mashed Potatoes with fresh potatoes. This statement was

also true. BEF's "farm-fresh goodness" statement is a representation "of such a general nature that a reasonable consumer would not rely on it as a statement of fact[.]" *Atik*, 2016 WL 5678474, at *12 (quoting *Simmons*, 912 N.Y.S.2d at 361). Thus, the plaintiffs fail to state a claim for breach of express warranty. *See Reyes*, 2019 WL 3409883, at *5 (dismissing claim for breach of express warranty when defendant accurately "warranted that its mashed potatoes were 'made with real butter' and 'made with fresh whole potatoes'" and did not expressly warrant that the mashed potatoes did not contain margarine or were "fresh[]").

B. *The plaintiffs fail to state a claim for breach of the implied warranty of merchantability because they do not allege that the parties were in privity.*

Under New York law, "[t]he implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection." *Prue*, 2012 WL 1314114, at *10 (quoting *Wojcik v. Empire Forklift, Inc.*, 783 N.Y.S.2d 698, 700 (N.Y. App. Div. 2004)). When plaintiffs allegedly suffer only financial, as opposed to personal, injuries, privity of contract between the plaintiffs and the defendant is a necessary element of the breach of implied warranty claim. *See Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015) (quoting *Wick v. Wabash Holding Corp.*, 801 F. Supp. 2d 93, 108 (W.D.N.Y. 2011)).

Here, the plaintiffs have not alleged privity, as they have not alleged that they purchased the Mashed Potatoes directly from BEF. The plaintiffs contend that several authorities stand for the proposition that privity is not a required element of the breach of implied warranty claim. *See* Pls.' Br. 13–14. But all of these authorities either deal with a breach of *express* warranty claim or reaffirm the privity element of the breach of implied warranty claim when plaintiffs do not allege personal injury. *See* N.Y. U.C.C. Law § 2-313(1)(a) (McKinney); § 2-313 cmt. 2; *Suarez v. Cal. Nat. Living, Inc.*, No. 17 CV 9847 (VB), 2019 WL 1046662, at *8–9 (S.D.N.Y. Mar. 5, 2019); *Sitt*,

2016 WL 5372794, at *16–17; *Mahoney v. Endo Health Sols., Inc.*, No. 15cv9841(DLC), 2016 WL 3951185, at *6 (S.D.N.Y. July 20, 2016); *Weisblum*, 88 F. Supp. 3d at 295–96; *Ebin v. Kangadis Food Inc.*, No. 13 Civ. 2311(JSR), 2013 WL 6504547, at *6 (S.D.N.Y. Dec. 11, 2013); *Prue*, 2012 WL 1314114, at *9; *Wick*, 801 F. Supp. 2d at 108; *Randy Knitwear v. Am. Cyanamid Co.*, 11 N.Y.2d 5, 10–13 (N.Y. 1962); *Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D.3d 77, 78 (N.Y. App. Div. 2004).[4] Thus, because they do not allege privity, the plaintiffs fail to state a claim for breach of implied warranty.

C. *Because the applicability of the Magnuson Moss Warranty Act is not apparent, the plaintiffs' claim under this Act is dismissed without prejudice.*

The plaintiffs purport to assert a claim under the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301–2312 ("MMWA"); *see* FAC 31, and BEF does not argue for its dismissal. "The MMWA grants relief to a consumer 'who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty." *Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2310(d)(1) (1994)). The statute defines a "written warranty" as

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time[.]

§ 2301(6)(A). Further, the MMWA does not apply "to any written warranty the making or content

---

[4] The plaintiffs also cite New York's U.C.C. § 2-318. *See* Pls.' Br. 15. This provision deals with third party beneficiaries of express and implied warranties. *See* N.Y. U.C.C. Law § 2-318 (McKinney). In their brief, the plaintiffs assert in conclusory fashion that "plaintiff and consumers are the intended third-party beneficiaries of the express warranties, as they, not the retail stores, are the end-users." Pls.' Br. 15. First, plaintiffs refer here only to express, and not implied, warranties. Second, the plaintiffs do not allege that they were third party beneficiaries in their FAC.

of which is otherwise governed by Federal law." § 2311(d). It is not clear how, if at all, the MMWA applies in this case, as the plaintiffs have not alleged a written warranty as defined in the statute. *See In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12–MD–2413 (RRM)(RLM), 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013) (citing *Wilson v. Frito–Lay N. Am., Inc.*, No. 12–1586 SC, 2013 WL 1320468, at *15 (N.D. Cal. Apr. 1, 2013)) (concluding that representation that chips were "all natural" was not written warranty under MMWA because it did not warrant product was free from defect or promise specified level of performance but rather was description of product). However, since I have not received briefing on the issue, I dismiss the MMWA claim without prejudice. If the plaintiffs have a plausible basis for alleging an MMWA claim, they may move to amend their complaint in accordance with my instructions below. As alleged, however, the plaintiffs fail to state a claim for breach of warranty under the MMWA or any other theory.

## IV. The plaintiffs fail to state a claim for fraud because their allegations do not raise a strong inference that BEF acted with the requisite scienter.

To state a claim for fraud under New York law, plaintiffs must allege: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996)). Further, under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) is satisfied when the complaint specifies 'the time, place, speaker, and content of the alleged misrepresentations'" and "how the misrepresentations were fraudulent[.]" *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014) (quoting *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013)). While Rule 9(b) permits plaintiffs to allege "[m]alice,

intent, knowledge, and other conditions of a person's mind . . . generally[,]" Fed. R. Civ. P. 9(b),

plaintiffs nonetheless must allege "details that 'give rise to a strong inference that the defendant[]

had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth[,]'"

*Schwartzco*, 60 F. Supp. 3d at 344 (quoting *S.A.C. Trading*, 711 F.3d at 359). Plaintiffs may raise

this inference "either (a) by alleging facts to show that defendants had both motive and opportunity

to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious

misbehavior or recklessness." *Id.* (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d

Cir. 2006)).

Here, the plaintiffs' allegations do not give rise to a strong inference that BEF intended to

defraud consumers, knew of some falsity, or recklessly disregarded the truth. First, the plaintiffs

have not alleged facts that show that BEF had both motive and opportunity to commit fraud. The

plaintiffs allege that BEF had a motive to "increase[e] [its] market share amongst the many rival

mashed potato companies." FAC ¶ 194. However, a "generalized motive to satisfy consumers'

desires" and "increase sales and profits[] 'does not support a strong inference of fraudulent

intent.'" *Frito-Lay*, 2013 WL 4647512, at *25 (quoting *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268

(2d Cir. 1996)). Second, the plaintiffs have not alleged "strong circumstantial evidence of

conscious misbehavior or recklessness." *Schwartzco*, 60 F. Supp. 3d at 344 (quoting *Lerner*, 459

F.3d at 290–91). The plaintiffs argue that their allegation that BEF labeled the Mashed Potatoes as

"made with fresh potatoes," when the 2014 industry brochure stated that "83% of consumers

believe refrigerated potatoes are fresh," suffices. Pls.' Br. 19–20. They contend that this brochure

indicates that the public mistakenly believed that refrigerated potatoes were "just prepared," and

that by invoking the term "fresh" despite knowing about consumers' mistaken belief, BEF wanted

consumers to "persist in believing something which is not true." *Id.* at 20. This argument is

implausible. By labeling the Mashed Potatoes as "made with fresh potatoes," BEF clearly meant that it took potatoes that were fresh and made mashed potatoes with them. Potatoes are a raw ingredient, and it is unclear what it would even mean to make mashed potatoes out of "just prepared" potatoes. Certainly, the brochure does not constitute *strong* circumstantial evidence of conscious misbehavior or recklessness. Thus, the plaintiffs have failed to state a claim for fraud.

## V.    The unjust enrichment claim is dismissed as duplicative.

"Under New York law, a plaintiff may prevail on a claim for unjust enrichment by demonstrating '(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" *Nordwind v. Rowland*, 584 F.3d 420, 434 (2d Cir. 2009) (quoting *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)). The "unjust enrichment claim 'is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'" *Weisblum*, 88 F. Supp. 3d at 296 (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012)). The unjust enrichment cause of action "is not a catchall . . . to be used when others fail." *Corsello*, 967 N.E.2d at 1185. It "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.* Typically, it is available when "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *Id.* District courts in this circuit have dismissed unjust enrichment claims when they have relied on the same facts as the plaintiffs' other asserted causes of action. *See Price v. L'Oréal USA, Inc.*, No. 17 Civ. 0614(LGS), 2017 WL 4480887, at *5 (S.D.N.Y. Oct. 5, 2017) ("All of the claims in the Complaint are based on the same alleged misrepresentation by Defendants . . . . Accordingly, Plaintiffs' New York unjust enrichment claim is dismissed as duplicative."); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392

(E.D.N.Y. 2017) ("Plaintiff's unjust enrichment claim relies on the same facts as her other causes of action in tort. Because this claim is duplicative, it is dismissed."); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 568 (S.D.N.Y. 2016) ("Buonasera is alleging tort causes of action and is relying on the same set of facts for these causes of action as he is for the unjust enrichment claim. Because Buonasera fails to show how the unjust enrichment claim is not duplicative, it should be dismissed."). In particular, I have previously dismissed an unjust enrichment claim when it duplicated both a state statutory claim under NYGBL §§ 349 and 350 and a tort claim for fraudulent misrepresentation. *See Davis*, 297 F. Supp. 3d at 334, 338.

In asserting the unjust enrichment cause of action here, the plaintiffs allege that BEF "obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits." FAC ¶ 199. This claim merely duplicates the plaintiffs' other claims, which arise out of the same alleged misrepresentations. *See Davis*, 297 F. Supp. 3d at 337–38 (dismissing unjust enrichment claim where plaintiffs asserted same allegation as here and based other claims on same alleged misrepresentations). The plaintiffs cite to *In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 325 (S.D.N.Y. 2019), for the proposition that their unjust enrichment claim "is not duplicative of the contract or tort claims because plaintiffs' consumer protection law claims may not succeed, yet the unjust enrichment claim would provide relief[,]" Pls.' Br. 12. It is true that *Skat* reasoned that "[a] claim is alternative and not duplicative if a plaintiff may fail on one but still prevail on the other." *Skat*, 356 F. Supp. 3d at 325. However, the *Skat* court determined that "[t]he plaintiff's claims for fraud and negligent misrepresentation theoretically could fail and [the plaintiff] still could prevail on the unjust enrichment claim." *Id.* Here, if the plaintiffs' other claims fail, so, too, does the unjust enrichment claim. Based on the

plaintiffs' allegations, the only possible basis for a finding "that equity and good conscience require restitution,'" *Nordwind*, 584 F.3d at 434, is BEF's alleged misrepresentations of the Mashed Potatoes. I have already determined as a matter of law that BEF did not misrepresent the Mashed Potatoes. Thus, "an unjust enrichment claim cannot remedy the defects" in the plaintiffs' other claims, and "[t]he unjust enrichment claim should be dismissed." *Corsello*, 967 N.E.2d at 1185. The plaintiffs' unjust enrichment claim is dismissed as duplicative.

### VI.    The plaintiffs' remaining theories are dismissed as implausible with respect to all causes of action.

In addition to the main theories discussed above—regarding BEF's "real butter" and "fresh potatoes" representations—the plaintiffs assert several other theories in their FAC. Drawing on my "judicial experience and common sense," *Iqbal*, 556 U.S. at 679, I find these theories implausible and therefore insufficient to provide a basis for relief under any cause of action.

First, the plaintiffs assert that the Mashed Potatoes contain less butter than advertised. FAC 13. They reason that the packaging for the Original product depicts a pat of melting butter atop a serving of Mashed Potatoes, *id.* ¶ 67, a standard pat of butter equals half a tablespoon of butter, *id.* ¶ 68, and half a tablespoon of butter contains an average of 3.5% of consumers' daily value of Vitamin A, *id.* ¶ 69, but the Mashed Potatoes contain 0% of consumers' daily value of Vitamin A, *id.* ¶ 70. Therefore, a serving of the Mashed Potatoes cannot possibly contain one pat of butter, and the image depicting them with a pat of butter on top is misleading. *Id.* This chain of reasoning is nonsensical. By the plaintiffs' logic, the Mashed Potatoes would contain no butter at all. Yet the plaintiffs concede that the Mashed Potatoes do contain some butter. *See, e.g.*, *id.* ¶¶ 8–9. In addition, the source that the plaintiffs cite for the assertion that "[t]he standard size pat of butter is equivalent to half a tablespoon," *id.* ¶ 68, ¶ 68 n.25, explicitly states that "the size of what we call 1 pat of butter can vary according to packaging[,]" Barbara D. Schuller, *How Much Is A Pat Of*

*Butter*, BASENJIMOM'S PLACE (Oct. 16, 2019), https://www.basenjimom.com/pat-of-butter.

Next, the plaintiffs raise a claim regarding the Mashed Potatoes' "natural flavor" ingredient. They seem to be alleging that the natural flavor derives from or is part of a margarine ingredient. *See* FAC ¶ 111 ("It is likely that the natural flavor in the Products is that flavor permitted by the margarine standard of identity, which permits the addition of flavoring substances."). They contend that it is misleading for BEF to fail to declare this natural flavor as part of the Mashed Potatoes' product name. *Id.* ¶ 113. The plaintiffs concede that the FDA does not require that BEF declare the natural flavor as part of the Mashed Potatoes' product name. *See id.* ¶¶ 112–13. Nonetheless, they allege that by emphasizing the Mashed Potatoes' butter ingredient and not its natural flavor ingredient on the Mashed Potatoes' packaging, BEF misleads consumers to "believe the flavor derives exclusively from butter[.]" *Id.* ¶ 114. The plaintiffs' allegation that the natural flavor in the Mashed Potatoes "is likely . . . that flavor permitted by the margarine standard of identity" is speculative. *Id.* ¶ 111; *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). It is also not plausible that emphasizing the word "butter" in the Mashed Potatoes' labeling could mislead consumers to believe that butter is the only flavor in the product; after all, the Mashed Potatoes primarily consist of potatoes and, presumably, primarily taste like potatoes. *See* FAC ¶¶ 8–9. In their brief, the plaintiffs offer an excerpt from an FDA guide regarding "the use of the word butter as part of a product name[.]" Pls.' Br. 10. They then transition to discussing the regulation of "artificial butter flavor[.]" *Id.* at 10–11. Because BEF neither uses the word "butter" as part of the Mashed Potatoes' name nor uses artificial flavor as an ingredient, *see* FAC ¶¶ 6–9, it is unclear what bearing the plaintiffs' argument has on the instant case.

Finally, the plaintiffs allege that BEF received a blended product—one containing butter

and vegetable oils—from its supplier and promoted only part of that blend—butter—on the front label of the Mashed Potatoes. *See id.* ¶¶ 105–06. They base this allegation on the asserted facts that "[i]n most instances where an end-user producer will require an ingredient that consists of butter and vegetable oils, they will purchase a 'blend' to add directly," *id.* ¶ 105, and that BEF historically used blended products as ingredients, *id.* ¶¶ 94–103. Again, the plaintiffs are purely speculating. Thus, to the extent that the plaintiffs' claims arise out of any of these implausible theories, they are dismissed.

### VII.    To the extent that the plaintiffs assert claims under the laws of states other than New York, I dismiss those claims without prejudice.

As discussed, the parties have premised their arguments on the assumption that New York law governs all of the plaintiffs' claims. However, the plaintiffs assert statutory claims under the laws of all fifty states. *See* FAC ¶ 163. In addition, a district court "sitting in diversity must generally apply the choice of law rules of the state in which it sits." *Solak*, 2018 WL 1870474, at *10 (quoting *Coudert*, 673 F.3d at 186). New York's choice of law rules may well dictate that, with respect to the plaintiffs who live outside New York and purchased the Mashed Potatoes outside New York, different states' laws govern those plaintiffs' tort and contract claims. Accordingly, to the extent that any of the plaintiffs' claims arise under New York law, I dismiss them with prejudice, as I have concluded that the plaintiffs failed to state a claim. To the extent that any of the plaintiffs' claims arise out of the laws of states other than New York, those claims are dismissed without prejudice, as I have not determined as a matter of law that the plaintiffs have failed to state claims under the laws of any other state because neither party has advanced any argument on that issue. Within ten days, the plaintiffs may move to amend their complaint accordingly.

However, I urge the plaintiffs to consider whether, absent any claims arising under New

York law, this district is a proper one in which to re-plead their remaining claims. The named plaintiffs from New York reside in and purchased BEF's Mashed Potatoes in New York, and the other named plaintiffs reside in and purchased the Mashed Potatoes in other states. *See* FAC ¶¶ 134–47. Further, the only named plaintiffs who assert claims under New York's consumer protection law are those who reside in and purchased the Mashed Potatoes in New York. *See id.* ¶ 163. It follows that, because I am dismissing with prejudice all claims arising under New York law, the only remaining named plaintiffs are those who reside in and purchased the Mashed Potatoes in other states. That is, this case no longer involves any Mashed Potatoes purchased in New York. Under 28 U.S.C. § 1391, venue is generally proper in a district where: (1) the defendant resides, which, for a corporate defendant, means any district where the defendant is subject to personal jurisdiction; (2) "a substantial part of the events or omissions giving rise to the claim occurred[;]" or (3) "any defendant is subject to the court's personal jurisdiction[,]" when "there is no district in which an action may otherwise be brought as provided in this section[.]" 28 U.S.C. §§ 1391(b), 1391(c)(2). With respect to personal jurisdiction, I note that, at least according to the plaintiffs' allegations, BEF "is an Ohio corporation with its principal place of business in . . . Ohio." FAC ¶ 150. Further, absent the claims by the New York plaintiffs who purchased the Mashed Potatoes in New York, it is difficult to see how a substantial part of the events giving rise to the remaining plaintiffs' claims could have occurred in this district, as the other plaintiffs assertedly purchased the Mashed Potatoes in other states. Thus, it appears that venue would not lie if the plaintiffs chose to re-plead in this district, though at this stage I will not conclusively find that venue is improper absent any briefing from the parties.[5]

---

[5] BEF argues that the plaintiffs "identif[y] named plaintiffs from the states of Maryland, Virginia, and North Carolina, but do[] not identify any law of these states that BEF Foods is alleged to have violated." Def.'s Br. 14. They also argue that "there are six states for which Plaintiff[s] allege[]

Therefore, to the extent that plaintiffs assert claims under the laws of states other than New York, I dismiss those claims without prejudice but encourage the parties to consider whether this district is the proper one in which to litigate. [6]

## VIII. The claims asserted by Jane Doe plaintiffs are dismissed for lack of standing.

The plaintiffs allege that several "Jane Doe" plaintiffs will represent the class. They claim that "Jane Doe plaintiffs are citizens of the 39 states for which the identity of a named plaintiff has not been disclosed, but who were affected in the same manner as the Named Plaintiffs." FAC ¶ 148. BEF argues that the Jane Does "are not real people" but rather are "a hypothetical type of person whom the plaintiff[s] or plaintiff[s'] counsel hope[] may exist and be discovered at some later time." Def.'s Br. 13–14. The plaintiffs do not respond to this argument.

Federal courts may hear only "cases" and "controversies." U.S. Const. art. III, § 2. In order for a justiciable case or controversy to exist, a plaintiff must satisfy the three requirements of constitutional standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which

---

neither a named plaintiff nor any state law that has been violated." *Id.* at 15. I note that before discovery into the putative class, it is impossible to know exactly which states' laws are actually implicated here. *See Greene*, 262 F. Supp. 3d at 80. In any event, if the plaintiffs choose to amend the complaint, they may resolve these omissions.

[6] BEF also asks that I dismiss the plaintiffs' claims to the extent that the plaintiffs seek injunctive relief, arguing that the plaintiffs lack standing to seek an injunction. *See* Def.'s Br. 19. The plaintiffs allege that they "would consider purchasing the [Mashed Potatoes] again if there were assurances that the [Mashed Potatoes'] representations were no longer misleading." FAC ¶ 153. Courts in this circuit "have differed as to whether plaintiffs seeking injunctive relief for consumer deception will be able to demonstrate standing [for injunctive relief] where . . . they allege they would buy the products in the future if not mislabeled." *Podpeskar v. Dannon Co., Inc.*, No. 16-cv-8478 (KBF), 2017 WL 6001845, at *4 n.2 (S.D.N.Y. Dec. 3, 2017) (citing cases). Because, assuming a damages theory, I find that the plaintiffs' claims fail as a matter of law—at least to the extent that New York law governs—I do not need to decide whether the plaintiffs have standing to seek injunctive relief. If the plaintiffs choose to re-plead as discussed above, I may revisit the issue of whether they have standing to pursue injunctive relief.

is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 560 (internal citations omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Second, the plaintiff must show "a causal connection between the injury and the conduct complained of . . . ." *Lujan*, 504 U.S. at 560 (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). Third, it must be likely that a favorable judicial decision will redress the injury. *Lujan*, 504 U.S. at 561 (citing *Simon*, 426 U.S. at 38, 43). In a class action, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14–CV–3826 (MKB), 2015 WL 5579872, at *12 (E.D.N.Y. Sept. 22, 2015) (quoting *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012)).

Here, because the plaintiffs have not responded to BEF's argument that the Jane Doe plaintiffs are not real people, I conclude that the Jane Does do not exist. *See id.* Therefore, they cannot possibly have standing, and I dismiss the claims that they assert as class representatives without prejudice. *See id.* at *13. Within ten days, and as described below, the plaintiffs may move to amend their complaint to allege that the Jane Does are real people and therefore have standing. *See id.*

## CONCLUSION

For the reasons set forth above, the First Amended Complaint is dismissed in its entirety. To the extent that this complaint asserts claims under New York law, those claims are dismissed with prejudice, as the plaintiffs have failed to state a claim. To the extent that the laws of other states govern, the plaintiffs' claims are dismissed without prejudice. Accordingly, the plaintiffs may file, within ten days, a motion to amend their complaint, along with their proposed Second

Amended Complaint. In doing so, the plaintiffs may also allege that the Jane Doe plaintiffs are real people and therefore have standing. However, I encourage the plaintiffs to consider whether continuing to pursue the matter in this district is proper. If the plaintiffs do not move to amend their complaint within ten days, I will direct the Clerk of Court to close the case.

SO ORDERED.


_____/s/_____
Allyne R. Ross
United States District Judge


Dated:          February 13, 2020
                Brooklyn, New York